I hereby certify the annexed instrument is a true and correct copy of the original on file in my office.

ATTEST: *Lauriet Edwards*

Clerk Ketchikan Gateway Borough

# KETCHIKAN GATEWAY BOROUGH

## Regular Assembly Meeting

## March 21, 2005

### Call to Order—Pledge of Allegiance—Roll Call

The regular meeting of the Ketchikan Gateway Borough Assembly was called to order at 5:30 p.m., Monday, March 21, 2005, by Mayor Salazar in the City Council Chambers.

PRESENT:    LYBRAND, THOMPSON, PAINTER, TIPTON, SHAY, LANDIS, KIFFER

ABSENT:     NONE

Staff present included Manager Eckert, Assistant Manager Corporon, Attorney Brandt-Erichsen, Finance Director Houts, Associate Planner/LEPC Lappin and Clerk Edwards.

### Ceremonial Matters—*Presentations, Proclamations, Awards, Guest Introductions*

There were no ceremonial matters.

### Citizen Comments—*Comments on any topic other than scheduled public hearings.*

Alaire Stanton, Ketchikan Senior Citizen Services, Inc., Sara Lawson, Ketchikan Community Center for the Arts, and Terry Wanzer, Historic Ketchikan, stated they were representing the White Cliff School Redevelopment Project. Ms. Stanton noted Dawn Allen-Herron, president of the White Cliff School Redevelopment Committee, was unable to attend the meeting to speak on behalf of the organization. Ms. Stanton, Ms. Lawson, and Mr. Wanzer provided information on the efforts of the committee and urged passage of Resolution No. 1879. It was noted two of the organizations allocated $7,500 each toward the first phase of the site review. An information sheet was distributed to the Assembly regarding the project and the three individuals responded to Assembly questions. Ms. Lawson stated she felt any liability issues could be worked out between the group and Borough management.

Bill Smart, a citizen of the Borough, noted the KPU powerline extension to the Lewis Reef area seemed to have reached an impasse. He requested the Assembly intervene to assure the project moved forward and the EDA grant was not lost. Mr. Smart contended the powerline would benefit the Borough and rather than have Pacific Log and Lumber pay for it, the contribution should be paid by the Borough.

Dick Coose, a citizen of the Borough, urged passage of Resolution Nos. 1873 and 1878 regarding state entitlement lands and timber supplies in the Tongass. He responded to questions from Assemblymembers.

### Public Hearings—*Procedure: Citizens will sign up on a sheet and testify in the order that they sign up. Citizens may present arguments in favor or in opposition; staff report update, if any; close the public portion of the hearing and the assembly deliberates and renders a decision on the matter at hand.*

Ordinance No. 1343 rezoning Tract 1001, Block 2, Lot 23; Cambria Drive West, City of Ketchikan, from General Commercial/Mobile Building Restricted (CG/MBR) to Light Industrial/Mobile Building Restricted (IL/MBR)

There was no public testimony.

M/S Painter/Shay to adopt Ordinance No. 1343.

EXHIBIT **3**

Upon roll call, the vote on the motion was:

YES:        SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:         NONE

MOTION DECLARED CARRIED.

Ordinance No. 1344 rezoning USS 2635, Lots 46 through 52; Nordstrom Drive, City of Ketchikan, from Low-Density Residential/Mobile Building Restricted (RL/MBR) to High Density Residential/Mobile Building Restricted (RH/MBR)

There was no public testimony.

M/S Thompson/Painter to adopt Ordinance No. 1344.

Upon roll call, the vote on the motion was:

YES:        PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:         NONE

MOTION DECLARED CARRIED.

Ordinance No. 1345 adopting an optional property tax exemption for the property owned by the Alaska Industrial Development and Export Authority

There was no public testimony.

M/S Kiffer/Shay to adopt Ordinance No. 1345.

Assemblymember Tipton asked Manager Eckert to explain the issue and alluded to discussions the city had conducted. Manager Eckert said there had been concern expressed about the ongoing tax exemptions. He said the biggest issue was whether the tax exemptions would transfer if AIDEA sold the property. He said there were a lot of unknowns regarding the issue and staff had engaged in discussions with AIDEA. He suggested the ordinance be postponed until some of the items were resolved.

M/S Tipton/Lybrand to postpone until such time as staff wants to bring it back to the agenda.

Upon roll call, the vote on the POSTPONEMENT was:

YES:        LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON, TIPTON

NO:         NONE

MOTION DECLARED CARRIED.

Ordinance No. 1346 authorizing the issuance of General Obligation School Bonds of the Borough in the principal amount of not to exceed $7,900,000, to fund the construction and equipping of school facilities as authorized by Ordinance Nos. 1323 and 1324 of the Borough and approved by the qualified electors of the Borough at an election held therein on October 5, 2004; providing for the date, form, terms and maturities of the bonds to be issued and for unlimited tax levies to pay the principal thereof and interest thereon, and providing for the sale thereof to the Alaska Municipal Bond Bank

There was no public testimony.

M/S Thompson/Kiffer to adopt Ordinance No. 1346.

Upon roll call, the vote on the motion was:

YES:       LYBRAND, KIFFER, SHAY, TIPTON, LANDIS, PAINTER, THOMPSON

NO:        NONE

MOTION DECLARED CARRIED.

Ordinance No. 1347 authorizing the issuance of General Obligation Refunding Bonds of the Borough in the principal amount of not to exceed $15,000,000 to refund certain outstanding General Obligation Bonds of the Borough; authorizing the appointment of an escrow agent and the purchase of escrowed securities to provide for the redemption of the bonds to be refunded; providing the date, form, terms and maturities of the bonds to be issued and for unlimited tax levies to pay the principal thereof and interest thereon, and providing for the sale thereof to the Alaska Municipal Bond Bank

There was no public testimony.

M/S Thompson/Painter to adopt Ordinance No. 1347.

Assemblymember Tipton asked if the savings on the recreation bonds did not equal three percent if they would not be included in the refinancing. Director Houts said the savings on the recreation bonds would all come to the Borough. He said the bond bank suggested refinancing on two issues, but unless the interest rate dropped it would not be reasonable to refinance the third issue.

In response to Assemblymember Landis, Director Houts noted the federal rates were trending upwards. He added the bonds could only be refinanced once and the issue could be done now or the Borough could wait to see if rates dropped.

Upon roll call, the vote on the motion was:

YES:       THOMPSON, SHAY, TIPTON, LANDIS, LYBRAND, KIFFER, PAINTER

NO:        NONE

MOTION DECLARED CARRIED.

**Scheduled Informational Reports and/or Presentations—***Reports on construction progress, financial status, presentations of budgets, audits, and reports or planning documents and related items.*

Board of Education Report

Board President Schafer said it was good to see work progressing on the Schoenbar project and Fawn Mountain project. In response to Assemblymember Tipton, she stated the PERS/TERS costs were currently included in the proposed district budget.

**Acceptance of Claims**

M/S Landis/Kiffer to accept the Ketchikan Gateway Borough claims for the period of March 4 through March 11, 2005, and wire transfers for the period of February 11 through March 4, 2005, in the amount of $1,009,166.49.

Assemblymember Painter requested he be allowed to abstain from voting on Check No. 11655 payable to Southeast Diesel and Electric. Mayor Salazar ruled Assemblymember Painter could abstain. There was no objection.

Assemblymember Thompson requested he be allowed to abstain from voting on Check No. 11601 payable to Alaska Pacific Environmental. Mayor Salazar ruled he could abstain. There was no objection.

Staff responded to Assembly questions.

Upon roll call, the vote on the motion was:

YES:        KIFFER, SHAY, TIPTON, LYBRAND, LANDIS, PAINTER [abstain on Check No. 11655], THOMPSON [abstain on Check No. 11601]

NO:         NONE

MOTION DECLARED CARRIED.

**Consent Calendar**—*Matters listed under the consent calendar are considered to be routine and will be enacted by one motion and one vote. There will be no separate discussion on these items. Platting or zoning items that are subject to court appeal may not be listed on the consent calendar. If the Mayor or an Assembly Member requests discussion, that item will be removed from the consent calendar and will be considered under Unfinished Business.*

Motion to approve the regular meeting minutes of March 7, 2004; as presented

Motion that there is no objection to the application for renewal of a Beverage Dispensary License for Hole in the Wall Marina

Motion that there is no objection to the application for renewal of a Beverage Dispensary Tourism Seasonal License for Clover Pass Resort

M/S Tipton/Shay to adopt the Consent Calendar as presented.

MOTION DECLARED CARRIED VIA VOICE VOTE.

**Unfinished Business**

Transferred Consent Calendar—NONE

**New Business**

Consideration of Resolution No. 1873 supporting an amendment to Section 6(a) of the Alaska Statehood Act to provide the state selection rights for up to 3 million acres on the Tongass National Forest

M/S Landis/Tipton to adopt Resolution No. 1873.

Assemblymember Painter expressed concern about granting the state sole discretion to select the land.

M/S Painter/Kiffer to amend Section 1 of Resolution No. 1873 by deleting the word "sole."

Assemblymember Shay said he believed the state would realize the wisdom of allowing communities to participate in a selection process.

Assemblymember Landis asked who would receive the resolution. He noted he assumed it would be sent to the Congressional Delegation.

Manager Eckert said it would probably take some time to get the land from Congress.

Upon roll call, the vote on the AMENDMENT was:

YES:        TIPTON, PAINTER, LYBRAND, THOMPSON, LANDIS, KIFFER, SHAY

NO:         NONE

MOTION DECLARED CARRIED.

Upon roll call, the vote on the motion was:

YES:        SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:         NONE

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1881 revising the procedure for disposal by sale or lease of certain parcels of real property in east Wards Cove area

M/S Painter/Thompson to adopt Resolution No. 1881.

Assemblymember Tipton asked if the parcels would be sold individually to get a price and then all the parcels would be offered as one parcel. He said the bulk sale price would have to exceed the total of the bids for the individual parcels plus 85 percent of the assessed value for those parcels on which bids were not received. Manager Eckert agreed. An extensive discussion was held and it was pointed out Section 2A of Resolution No. 1881 was very confusing and needed to be rewritten.

Assemblymember Shay asked if the proposed method of sale was recommended by the committee and Mayor Salazar said it was proposed to the committee and recommended by it. Terry Wanzer, a member of the Wards Cove committee, reviewed the committee's work to assure the Borough would receive the highest value for the land. He believed the Borough would be very successful by following the proposed method.

Mayor Salazar asked if 90 days would be sufficient to close on the land sales. Mr. Wanzer assured the Assembly the time was more than adequate because the bulk of the sales were raw land.

Assemblymember Tipton asked when the twenty percent earnest money deposit would be required and Mr. Wanzer said only after an offer and acceptance had been concluded.

Assemblymember Thompson said he had received some concern that if a parcel had some type of environmental problem if the buyer could withdraw from the sale and have his deposit refunded. Mr. Wanzer pointed out warranty deeds would be provided on the parcels. He said they were insurable and title insurance would be provided at the buyer's expense. He went on to say the title insurance would reveal any problems.

Assemblymember Lybrand suggested the packets for the sale be made available in advance of the sale. Manager Eckert said they would be ready in advance. Mayor Salazar suggested information be provided on the website.

Assemblymember Landis noted there was no method outlined for selection of real estate professionals and he was concerned about that omission. Manager Eckert said the commission on commercial property sales may be seven to ten percent. He said the resolution set the cap at five percent, and it could be split between agents or brokers. Manager Eckert said the properties would be on an open listing. Mr. Wanzer explained the open listing concept. Assemblymember Tipton said he understood the wording to mean the amount could be negotiated by the Manager. Manager Eckert said he would assure the amount would not exceed five percent.

Assemblymember Thompson asked if the resolution could be postponed for two weeks. Manager Eckert said there would not be a problem.

M/S Tipton/Thompson to postpone to next Tuesday's meeting.

Upon roll call, the vote on the motion was:

YES:        TIPTON, THOMPSON, KIFFER

NO:         PAINTER, SHAY, LANDIS, LYBRAND

MOTION DECLARED FAILED.

Assemblymember Painter said he wanted it understood if the Assembly passed the resolution that staff would make the changes as discussed and were on record.

Attorney Brandt-Erichsen said he understood the first time the parcels were offered for bid the minimum bid would be the 2005 Borough appraised value. He continued that when the parcels were offered in bulk, the sum of the value of the highest bids, plus 85 percent of the Borough appraised value for parcels that did not sell, would provide the lump sum for the bulk sale. He said if the bid received was higher than the bulk total of the parcels then they would all be sold together, otherwise the parcels would go to the individual buyers. Attorney Brandt-Erichsen said the outlying parcels and the Mud Bight parcels would be individual sales with a minimum amount of 100 percent of the 2005 Borough appraised value. He then read proposed wording for an amendment to the resolution.

M/S Shay/Painter to amend the resolution as outlined by Attorney Brandt-Erichsen.

M/S Landis/Kiffer to amend Section 3 A. to strike the words "not exceed" and substitute the word "be."

Assemblymember Tipton disagreed with the proposed amendment because he felt the Manager should be able to negotiate a lower fee. He expressed concern about voting on language he had not seen in writing. He suggested the resolution be tabled until the proposed amendment language could be copied for Assembly review.

Upon roll call, the vote on the AMENDMENT to alter the language in Section 3A was:

YES:        LANDIS

NO:         LYBRAND, KIFFER, SHAY, TIPTON, PAINTER, THOMPSON

MOTION DECLARED FAILED.

M/S Painter/Shay to table Resolution No. 1881 [Resolution No. 1875 was also tabled at this time because it was closely related to Resolution No. 1881].

Regular Assembly Meeting
March 21, 2005 – Page 6

MOTION TO TABLE RESOLUTION NOS. 1881 AND 1875 DECLARED CARRIED VIA VOICE VOTE.

Consideration of Resolution No. 1875 revising the procedure for disposal by sale or lease of certain parcels of real property in the west Wards Cove, Mud Bay, and Carroll Inlet areas

Resolution No. 1875 was tabled jointly with Resolution No. 1881.

Consideration of Resolution No. 1876 authorizing the acceptance of an easement from the USCG for the purpose of constructing a legal driveway for a fire station

M/S Painter/Kiffer to adopt Resolution No. 1876.

Upon roll call, the vote on the motion was:

YES:        THOMPSON, SHAY, TIPTON, LANDIS, LYBRAND, KIFFER, PAINTER

NO:         NONE

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1878 urging the U.S. Forest Service to offer for sale timber volume equal to the allowable sale quantity provided for in the Tongass Land Use Management Plan—Mayor Salazar

M/S Thompson/Shay to adopt Resolution No. 1878.

Upon roll call, the vote on the motion was:

YES:        KIFFER, THOMPSON, PAINTER, SHAY, TIPTON, LYBRAND, LANDIS

NO:         NONE

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1879 accepting and endorsing the intention of the Ketchikan Community Center for the Arts Steering Committee and the Ketchikan Senior Citizen Services to prepare a plan for the continued beneficial use of the White Cliff School property for the Community of Ketchikan; authorizing the Ketchikan Area Arts and Humanities Council and its designated representatives full and unrestricted access to the White Cliff School property for that purpose, expressing its intent to take necessary steps to transfer fee simple title or to otherwise agree to allow full use and occupancy of the White Cliff School property at nominal cost in accordance with that plan—White Cliff Re-Development Committee

M/S Shay/Thompson to adopt Resolution No. 1879.

Assemblymember Tipton said he could not find the "term designated above" referred to in Section 2 of Resolution No. 1879. Assemblymember Thompson said it was the one year the utilities were waived by the city as noted in the resolution.

Assemblymember Lybrand asked if this would prevent the Borough from using the building for its purpose. Manager Eckert said it would open the building up for use of other parties. He said the Borough might be able to use a portion of it.

Assemblymember Landis said if he was representing one of the interested parties he could understand their concern about the building. He noted they were discussing appropriating funds from their organizations to investigate the possibility of using the building. He commented he was sure the interested organizations had not anticipated an organization that might need 15,000 square feet. He urged the Assembly to decide whether it was in or out of the building. He said the organizations needed firm assurance the Borough would not come back and demand use of the building after they invest in studies of the building.

Sara Lawson said the Arts Center Committee had considered a 30,000 square foot facility need and she understood the seniors needed about 25,000 square feet. She said the site review would cover the various needs of the agencies. Ms. Lawson noted the building was about 49,900 square feet.

Assemblymember Thompson said the Assembly was agreeing to give the group the first right of refusal on the building for a year. They would spend the money and do a plan and if it worked for them they were going to come back to the Assembly for a fee simple title. He said the Borough would have no recourse on the building at that point. He said the agreement on the utilities with the city was for one year and that was the time the organization had to develop its plan.

Assemblymember Painter asked if there was a need for a hold harmless agreement with the groups who wanted to use the building. Manager Eckert responded at this point he did not believe so. He said if the organization did not have enough groups to fill the building then they had the option to approach the Borough to see if the Borough could use some of the space.

Assemblymember Lybrand said the use of the building for a year would be in the form of a lease and that lease would come back to the Assembly.

Upon roll call, the vote on the motion was:

YES:       TIPTON, PAINTER, LYBRAND, THOMPSON, LANDIS, KIFFER, SHAY

NO:        NONE

MOTION DECLARED CARRIED.

RECESS:

The meeting recessed at 7:04 p.m. and reconvened at 7:15 p.m.

Consideration of Resolution No. 1880 regarding an agreement with Rabanco for disposal of solid waste sludge

M/S Painter/Shay to adopt Resolution No. 1880.

Assemblymember Thompson said he had a problem with the contract and noted the definition of "acceptable waste" was a definition of municipal solid waste and was not limited to sewer sludge. He felt the contract should be modified to state septic sewer sludge and/or biosolids would be the material provided.

Mayor Salazar asked if the Borough could opt out of the contract if the ethanol plant went into production. Manager Eckert said that was one of his concerns and noted he would like to review the contract with Mr. Payne to see if there was a problem. He said he would like to see it postponed for further study.

Assemblymember Thompson asked if the Borough could enter into a contract on a container-by-container basis for disposal of the sludge. Manager Eckert said he understood the Borough was going to contract with someone to remove the sludge. Assemblymember Thompson said he could not see the need to enter into a five-year contract and suggested the Borough enter into an agreement for a per-ton charge.

Regular Assembly Meeting
March 21, 2005 – Page 8

Manager Eckert reiterated his concern about being locked into a contract. Assemblymember Thompson read from the contract in which it stated the Borough was obligated to deliver all acceptable waste to the transfer station.

M/S Lybrand/Kiffer to postpone this [Resolution No. 1880] to the next regular meeting [April 4].

Assemblymember Landis noted the contract provided for disposal of abandoned vehicles and he believed the Borough had different arrangements for them.

Assemblymember Kiffer asked Manager Eckert why the Assembly was dealing with the contract if management had reservations about it. Manager Eckert responded he had been out of town and did not see the draft, but staff brought it forward to try to deal with the sludge. Assistant Manager Corporon said they were trying to get the same price as the city without going out for bid. He emphasized it was a draft document and the Public Works staff wanted to know if the disposal could be done by sole source.

Assemblymember Thompson commented it might be in the Borough's best interest to get a price from other businesses, especially if it was going to occur over a long period.

Manager Eckert said he could bring something back to the Assembly after more research was done on it. Assistant Manager Corporon said the intent was to try and get rid of some of the sludge by shipping it south. He said Director Voetberg told him there were two bidders for the city project and the other bidder was about twenty-five percent higher.

Assemblymember Lybrand asked if the Borough could start shipping the sludge on a container basis. Assistant Manager Corporon explained the Manager's $25,000 limit would be surpassed very quickly and staff wanted to obtain Assembly approval.

Assemblymember Thompson urged staff to put the disposal out for bid.

Mayor Salazar said he thought the plan was to compost the sludge and Assistant Manager Corporon advised the Assembly decided not to build the composting facility last year. Mayor Salazar asked how the cost of the facility would compare to the cost of shipping the sludge out and Assistant Manager Corporon responded he did not have the figures currently available.

Upon roll call, the vote on the motion TO POSTPONE was:

YES:      SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:       NONE

MOTION DECLARED CARRIED.

Authorization to submit an EPA grant application utilizing the Borough's $900,000 EPA appropriation

M/S Landis/Kiffer that the Borough Assembly authorize the Manager to submit a grant application in the total amount of up to $597,000 to EPA through the 2002 STAG Funds/VA-HUD appropriations bill for sewer and water improvements associated with South Tongass sewer and water crossings, Gold Nugget sewers, and water to Herring Cove.

Upon roll call, the vote on the motion was:

YES:      PAINTER, TIPTON, SHAY, KIFFER, LANDIS, LYBRAND

NO:        THOMPSON

MOTION DECLARED CARRIED.

Authorization to dedicate Planning Department staff to carry out a downtown development planning process

M/S Painter/Shay given the far-reaching consequences on the future of Ketchikan in developing additional cruise ship berths, the Borough Assembly hereby directs the Borough Manager to dedicate Planning Department staff to carry out a downtown development planning process in cooperation with the City and with participation of Ketchikan's citizens.

Assemblymember Tipton asked about the intent of the motion and noted the city had been discussing the expansion of the cruise ship docks for many years. He wondered why the issue was now being brought forward. Manager Eckert said it was suggested something be brought to the Assembly for discussion. He stated it was fueled by the concern about a dock being built in front of Trident and AGS and the ramifications for the two businesses. Manager Eckert said there had been no discussions with the city and it was felt meeting with the city might prove beneficial.

Assemblymember Kiffer commented he was in favor of good community planning and noted he would probably have been in favor of the motion if it had come before the Assembly two years ago. He wondered what the proposed effort was going to accomplish. Manager Eckert responded there were issues with loss of parking spaces downtown and changes in traffic patterns. He noted the city had put a lot of time, money and effort into their planning and said the Borough should have offered its assistance a long time ago.

Mayor Salazar felt the Borough should wait to see what happened with the consolidation issue. He said if the community consolidated it would take care of the issue.

Assemblymember Painter spoke against the motion because the process had been going on quite a while and he felt public opinion would determine how the project progressed. He said intervention by the Planning Department at this point would probably delay the process.

Assemblymember Lybrand said he asked the city to form a committee consisting of the governing bodies and dock users to help decide the issues. He commented the question was if the community wanted to expand the facilities to accommodate more visitors.

Assemblymember Thompson stated the issue highlighted the problems with the division of powers between the city and Borough and added he agreed with what was said that if the Borough was going to provide input on the project it should have done it long ago. He asked if there was a plan for Ketchikan in place that any development had to conform to. Planner Lappin said there was the comprehensive plan but it would not address the issue of additional berths.

Assemblymember Lybrand reiterated his question if the people of the community wanted to increase the tourist burden from one million to one and one-half million. He said in order to make that decision they needed information on the impact of the additional people.

Assemblymember Landis said the letter from the Planning Commission was that the city understands that there were impacts and offered itself as a resource to address any of the concerns that might arise. He said taken that way it would not have to become a political issue.

Assemblymember Shay agreed with Assemblymember Landis and noted also the Borough had economic development powers and he was concerned about business dislocations. He said it had been reliability reported to him if the new development impacted a certain business, that business would leave the community. He said

even if the motion was voted down citizens needed to talk to the city council and city staff to make sure the negative impacts did not occur. He observed the fish were going to be around for eons and the tourists may or may not be here in great numbers.

Mayor Salazar commented that one plan showed a loss of about 125 parking spaces and he had not seen where they would be replaced.

Upon roll call, the vote on the motion was:

YES:      SHAY

NO:       LANDIS, LYBRAND, KIFFER, PAINTER, THOMPSON, TIPTON

MOTION DECLARED FAILED.

Consideration of Resolution No. 1882 authorizing a transfer of funding from the Monroe Street Tot Lot CIP to the Ward Cove Athletic Field CIP; waiving the purchase of field surfacing material from the competitive bid process; authorizing the Manager to purchase field surfacing material

M/S Lybrand/Shay to adopt Resolution No. 1882.

Assemblymember Tipton said he did not know when it was decided this was a priority. He stated when the parcel was first started as a waste site it was looked at for one of the groups that needed the space and they had said it was too far out to use. He said he asked for the two fields at North Point Higgins to be resurfaced and that had not happened. Assemblymember Tipton continued those two fields had a lot more use as existing facilities than new fields would. He suggested rather than waive the bid procedure that a proposal be advertised to have proposed suppliers furnish materials to see if they could provide surfacing materials that would meet specifications.

Assemblymember Lybrand requested the question be divided: (1) the issue of how to complete the agreement with Secon; and (2) transferring $60,000. He said he would like to delete any reference to any source of funding and the field materials. Assistant Manager Corporon interjected there were three issues: (1) resolve the overlay for the Secon agreement; (2) authorizing the switch of funding from the tot lot to the field; and (3) the sole source waiver for the surfacing. He said he would definitely like direction on the Secon agreement tonight.

Mayor Salazar ruled the question would be divided. There was no objection from the Assembly.

Assemblymember Lybrand said if the loaming and seeding were not going to be required the Borough should receive a credit for the work. He recommended the field just be graded and capped with rock.

Assemblymember Painter agreed with Assemblymember Lybrand and noted the Borough had provided the site for free to Secon and commented it also appeared the field would not be needed soon.

Assemblymember Landis agreed with Assemblymember Lybrand and agreed it should be capped.

Assemblymember Tipton commented he did not believe the field was too far out and said he believed the athletic field next to Fawn Mountain would be included in the upcoming budget.

M/S Lybrand/Thompson that the staff be directed to inform Secon Inc. to complete their rock capping and furnish a substantial credit for deleting the loaming and seeding.

Upon roll call, the vote on the motion was:

YES:          LYBRAND, KIFFER, SHAY, TIPTON, LANDIS, PAINTER, THOMPSON

NO:           NONE

MOTION DECLARED CARRIED.

Mayor Salazar asked if the Assembly would like to postpone the other two items to be considered at budget time. Assemblymember Shay noted he visited the tot lot and said it was in fairly decent shape. He asked how the locations of the various recreation facilities were determined and if neighborhoods were consulted about the need for them. He urged the Borough consider input from users and the Parks and Recreation staff.

Assemblymember Thompson noted if staff had a problem with performance of a contractor in providing materials the Borough had the ability to test them and require warranties. He did not believe this type of contract should be sole-sourced.

M/S Shay/Painter to postpone the issue of the Monroe Street tot lot for consideration during the budget process.

MOTION DECLARED CARRIED VIA VOICE VOTE.

M/S Lybrand/Thompson to have purchase of the surfacing materials done through the competitive bid process.

MOTION DECLARED CARRIED VIA VOICE VOTE.

[Clerk's Note: Resolution No. 1882 was not approved and the number will be re-used.]

M/S Thompson/Tipton to take Resolution No. 1881 and Resolution No. 1875 from the table.

MOTION DECLARED CARRIED VIA VOICE VOTE.

Consideration of Resolution No. 1881 revising the procedure for disposal by sale or lease of certain parcels of real property in east Wards Cove area

M/S Painter/Thompson to adopt Resolution No. 1881.

M/S Shay/Painter to amend the resolution as outlined by Attorney Brandt-Erichsen.
   [Clerk's Note: The wording modifies Section 2.A. of Resolution No. 1881 to read as follows:
   A.          The parcels to be offered in the bulk sale are described in the maps attached as Exhibits B, G, H,
   I, and J and shown as parcels B-11 (tract 3011), B-12, B-13 (tract 3013), B-14, B-15 (tract 3015), B-16,
   B-17 (tract 3017), B-18 and B-25. These parcels shall be lumped together as a single unit and begin with
   an outcry auction on these individual parcels setting the 2005 Borough appraised value of the parcels as
   of January 31, 2005, be the minimum bid price. These sales would not be complete until after the bulk
   sale auction, and would only be effective if the bulk sale auction did not yield a buyer. If a parcel had no
   bid received the price for that parcel will be set at 85 percent of the 2005 Borough appraised value of the
   parcel as of January 31, 2005. The minimum opening bid to be the sum of the bids received so far and 85
   percent of the minimum assessed value of parcels not bid on as the minimum bid for this entire unit. If no
   sale as lump sum of all east-side parcels occurs, then the individual sales of each parcel would be final.

   Parcels B-20, B-21, B-22, B-24, shown on Exhibits C, D, E, and F, shall be sold individually with the
   minimum bid of the 2005 Borough appraised value.]

Upon roll call, the vote on the AMENDMENT was:

YES:          LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON, TIPTON

NO:       NONE

MOTION DECLARED CARRIED.

M/S Tipton/Painter to amend Resolution No. 1881, Section 3.A., first sentence, to read: "The Borough Manager shall be allowed to negotiate the commission on all sales which shall not exceed 5 percent of the sales price."

Assemblymember Tipton said he had discussed his amendment with Manager Eckert and he was comfortable with it.

Assemblymember Landis said it was not the Assembly's responsibility or intent to create a competition between the various realtors. He felt the amendment would have a tendency to do that.

Upon roll call, the vote on the AMENDMENT was:

YES:      KIFFER, THOMPSON, PAINTER, SHAY, TIPTON, LYBRAND

NO:       LANDIS

MOTION DECLARED CARRIED.

Upon roll call, the vote on the motion was:

YES:      TIPTON, PAINTER, LYBRAND, THOMPSON, LANDIS, KIFFER, SHAY

NO:       NONE

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1875 revising the procedure for disposal by sale or lease of certain parcels of real property in the west Wards Cove, Mud Bay, and Carroll Inlet areas

M/S Shay/Thompson to adopt Resolution No. 1875.

Assemblymember Tipton asked if B-3 included the administration building. Manager Eckert responded yes. Assemblymember Tipton said he had a concern about the minimum bid price because he believed the Borough just invested $1.15 million in the building. He said that made him wonder about some of the other values listed on the west side of the cove. Assemblymember Thompson commented you could put the money in but that did not mean it would assess for any more. Mayor Salazar interjected he wanted to insure the Borough recovered any costs it had in the building.

Manager Eckert said the improvements should certainly increase the value. He said he did not have any problem with any of the other parcels.

Assemblymember Thompson questioned Section 1, Item 4i, regarding the bulk water agreement and said he understood the agreement was not in effect. Manager Eckert said he believed the Assembly had approved the agreement. He said he would check on it.

M/S Thompson/Lybrand to amend to include parcels designated as B-27, B-28, B-29, and B-30, in the list of properties for disposal, subject to any leases in effect at the time of the sale.

He said that included all the uplands, veneer plant, and all the properties up the creek as part of the sale as an incentive to those people who might have an interest there to come to the table. He said it was time for them to stop dallying around.

Assemblymember Tipton asked why the dam and pipeline were not included in the amendment and Assemblymember Thompson said he did not because he thought the sale was restricted to the properties in the cove. He said he would have no objection to adding those to the list.

Assemblymember Tipton provided a friendly amendment to include those parcels designated as B-31, B-32, B-33, and B-34. Assemblymember Thompson and Assemblymember Lybrand agreed.

Assemblymember Thompson said he believed if everything was put out as a bulk purchase the Borough would see some action.

Mayor Salazar wondered about the affect of selling the land while the Borough was working with Mr. Falconer and Manager Eckert said right now the issues were in the 90-day period for Mr. Falconer and Mr. Falconer had asked the Borough to stop the clock until direction was provided on the NRDC issue. Manager Eckert said Mr. Falconer now had a certain amount of time in which to execute a contract.

Assemblymember Landis asked for a further explanation of the amendment. Mayor Salazar stated Assemblymember Thompson wanted to add B-27, B-28, B-29, B-30, B-31, B-32, B-33, and B-34. Assemblymember Landis asked if those were the ones scheduled to be retained by the Borough and Mayor Salazar responded yes. Manager Eckert said B-28, B-29, and B-30 through B-34, were under lease or under terms of a contractual obligation on which the Borough stood to make a significant amount of money. Assemblymember Thompson said his amendment was to include those properties because there were people who had expressed interest, but the Borough had not seen any substantial movement on their part other than an expression of interest. He said he was waiting for someone to step up to the plate and take some action. He noted if the properties were under lease then the purchaser would have to honor the lease.

Assemblymember Tipton asked if it was the intent of Manager Eckert to have covenants or easements on the land so various schemes such as a future water supply for the north end, interaction between the veneer mill and the ethanol plant, a generator at the dam, etc. could proceed.

Mayor Salazar stated he felt there should be a royalty on the water even if the Borough sold the dam and pipeline. Manager Eckert stated the contract with Mr. West contained a nice royalty and the Borough's needs had priority. Mayor Salazar stated if someone bought the land they would understand what they were getting.

Assemblymember Landis said he was not knowledgeable about the timelines involved in the discussions with potential users of the Wards Cove site and was not comfortable. He wondered if the inclusion of the properties would be an inappropriate action. He said this was Manager Eckert's opportunity to let the Assembly know if this was a good move or not.

Manager Eckert responded on B-28 the Borough had a solid lease signed and was just waiting for the execution of the option on the money. He noted on B-29 there was not a signed lease. Manager Eckert stated on B-30 to B-34 there was a contract in place with Mr. West. He said B-27 needed further discussion, he was not sure about it and questioned whether it should be used for public access to Wards Creek or just sold outright. Manager Eckert pointed out most of the issues would be resolved prior to a sale, unless it occurred within the next two to three weeks. He said he was comfortable with the motion that was on the table.

Mayor Salazar said the Borough would receive more money for the dam and pipeline if it had title to the impoundment area.

Assemblymember Lybrand said when the parcels were advertised for sale all the leases would be disclosed.

Assemblymember Painter stated he would support the motion because he was tired of nothing happening out at the cove.

Upon roll call, the vote on the AMENDMENT was:

YES:        SHAY, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:         LANDIS

MOTION DECLARED CARRIED.

Assemblymember Kiffer asked why B-36, B-37, and B-38 were being excluded. Manager Eckert explained those were areas for the sewer and sludge facilities. He said those areas would also be necessary if the sewer treatment plant was re-activated. He said it might be offered for use by the city, if necessary.

Mayor Salazar requested the city provide a briefing to the Assembly about what it planned in the next four or five years for the sewer treatment plants. Manager Eckert said he had brief discussions with the city manager and was told in the next four or five years they were going to have to do something.

Assemblymember Landis said it appeared there was discussion about B-5 and B-6 which were not reflected on the maps. Manager Eckert said there was a plan to split B-5 and B-6 into three or four different lots. He said this plan had not gone forward yet. He said there was also a small portion of B-6 that was going to be used for access and there were plans to eliminate one of the rights-of-way on B-6. Assemblymember Thompson said these items would not matter if the property was sold in bulk. Manager Eckert said if there was not a bulk sale consummated in the next few weeks then staff would go ahead with the plan to create more parcels and return to the Assembly with a final plan.

Assemblymember Shay rendered an impassioned speech about how the people who were naysayers about the Wards Cove properties would be proven wrong once the property was sold. He then said it appeared AMHS had a plan which may use part of B-36 and B-37. Manager Eckert said it was actually the tidelands. Assemblymember Shay said AMHS could lease the property from a private landowner.

Upon roll call, the vote on the motion was:

YES:        PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:         NONE

MOTION DECLARED CARRIED.

Mayor Salazar asked if the dock was being sold and Manager Eckert said in a bulk sale it would be gone.

**Reports of Committees, Executive, Administrators**

Manager's Report
[Clerk's Note: Attachments are not provided in the minutes.]

      1.     Fawn Mountain Elementary School
      Attached are the Project Manager's most recent report and a few pictures. The first concrete wall was poured on March 11.

      2.     Schoenbar Middle School

Attached are the Project Manager's most recent report and a few pictures. Area "C" (classroom wing) substantial completion date on schedule for May 12. Lower Area "B" (admin, music, etc.) substantial completion date on schedule for June 9. Upper Area "B" (library, commons, etc.) substantial completion date on schedule for July 26. Area "A" (gym, kitchen) is scheduled for substantial completion on July 26. The Project Manager hopes it will be completed by that date but isn't as confident as he is with the other areas.

3.    Department Reports
Also attached are reports from the Directors of Finance, Public Works, Assessment and the Supervisor or Parks and Recreation.

4.    Maritime Security Exercise
On March 8, Borough staff participated in a maritime security exercise conducted by the Coast Guard throughout all of Southeast Alaska. The MARSEC level was raised from Level 1 to Level 2 that morning and maritime facilities had to take appropriate actions to increase security. The rest of the day was spent conducting various drills and training. Training was conducted for the guards at the Wards Cove Industrial and Maritime Center. Staff and the guards coordinated security responses with the Coast Guard and the AMHS Security Officer and also participated in drills and exercises with the crew of the TAKU, which was moored at Wards Cove.

5.    Revilla Road Cleanup Day
The Borough's Enforcement Officer is coordinating a Spring Cleanup Day for Revilla Road from the intersection of North Tongass Highway all the way to Lake Harriet Hunt. It is scheduled for Saturday April 16 starting at 8:00 am. Several organizations and businesses have already committed volunteers including Community Connections, Boy Scouts, Girl Scouts, Ketchikan Youth Court, Alaska Travel Adventures, Cape Fox Corporation and the U.S. Forest Service. Several local businesses have also donated prizes (mostly gift certificates) which will be hidden along the route where volunteers should be able to find them during the cleanup. The Borough will be setting up a food tent and is also accepting donations to help feed the volunteers. Additional volunteers are more than welcome to participate. Pre and post cleanup publicity is being coordinated with the local media.

6.    Volunteer Support for Salvation Army Soup Kitchen
Volunteers from the Borough staff are now teamed up with three local restaurants to provide lunch at the Salvation Army Soup Kitchen. Annabelle's will provide the food on the first Thursday of every month, Pioneer Cafe on the fourth Thursday and Bar Harbor on the fourth Friday. With a total of 9 staff volunteers each person should have to serve about once a month.

Manager Eckert said the trip to Juneau went well and the big issue was PERS/TERS and there were a number of bills to deal with it. He reviewed more of the issues being discussed in Juneau and said it appeared health and safety issues had a good chance for funding, but everything was on the table.

Assemblymember Tipton said he had a hard time understanding why the Borough would have responsibility for any part of the damaged gym floor at Schoenbar. He said Manager Eckert had to make it clear to the contractor that as of January 27 liquidated damages were being charged. Assemblymember Tipton pointed out the completion dates listed in Project Manager Boyd's report were totally unacceptable.

Assemblymember Lybrand suggested the kitchen at Schoenbar did not need to be done under the current contract. He said it would simplify the Schoenbar situation by eliminating the kitchen work from the contract and contract it out at a later date. He said it would be a substantial change order to the existing contract and cause further delay because of the availability issue involved with the equipment. Assemblymember Tipton disagreed.

Assemblymember Tipton noted there was a similar situation regarding the delay of the sludge treatment plant work. He said the completion date was now listed as June, and again, he felt the date was unacceptable. Manager Eckert said he would have an answer at the work session.

Assemblymember Painter questioned Manager Eckert about the overtime pay for ferry workers for medivac flights. He asked if Alaska Airlines was late if they were charged overtime pay for the ferry workers. Manager Eckert said he would research the issue. Mayor Salazar said if it was a concern that maybe landing fees could be increased during budget time. Assemblymember Tipton asked if Assemblymember Painter was asking the Manager to bring back a response to the letter from the hospital and information about the airport. Assemblymember Painter responded yes.

Assistant Manager Corporon explained the Borough was partially responsible for the gym floor damage because there was a pre-existing leak that was not revealed until the wall was removed on the east end of the gym. Assemblymember Tipton suggested the gym floor be removed from the Schoenbar contract and contracted out to the company coming down in July to do the recreation center floors. Assistant Manager Corporon said there might be a timing problem.

## Mayor's Report

Mayor Salazar reported he attended the Legislative Liaison Fly-In. He said it appeared the Borough was going to have to pay for the airport parking lot paving because AIP funding could not be used for that type of work.

Mayor Salazar said he attended a U.S. Forest Service workshop in Wrangell in which the mayors from Southeast Alaska communities gave the Forest Service their ideas on forest issues.

## Committee Reports

There were no committee reports.

## Assemblymembers' Comments

Assemblymember Tipton said he was shocked to hear the request from Mr. Smart regarding the powerline. He said the responsibility should rest with the private landowners. He reminded everyone that although the Arts Center and Seniors groups were going to invest money in the White Cliff project, both of those entities received grants from the Borough. He noted the PERS/TERS issue was a retirement versus education bill that came from the Finance Committee. He said it was holding the education funding hostage for the retirement change from defined benefit to defined contribution. Assemblymember Tipton said the Democrats were saying they were two different issues, but he disagreed because it was taking money from the community. He said it was interesting listening to the different proposals in Juneau, but everyone said the retirement system was going to have to change.

Assemblymember Kiffer thanked Kyle Johansen for setting up the meetings in Juneau. He said it was very depressing to hear about the problems with PERS/TERS. Assemblymember Kiffer said he would like to see a check with the troopers added to the process to deal with liquor license renewals. Assemblymember Tipton said it was done by the ABC Board. Assemblymember Kiffer said he also was confused on the resolutions dealing with sale of the Wards Cove properties.

Assemblymember Lybrand left the meeting at 8:43 p.m.

Assemblymember Kiffer requested the budget meeting be moved from Tuesday, March 29, to Monday, March 28. There was no objection.

Assemblymember Thompson said on the item dealing with the EPA grant he voted no because the shipyard was originally the recipient of that money. He said there was $873,000 of which $500,000 went to the shipyard. He said he had talked to the shipyard personnel and they still needed the sewer and water and they were planning to resubmit their application. He said the Assembly authorized up to $500,000 and he believed the Borough should ask for the $373,000 that the shipyard had no objection to and use it for South Tongass so everyone could move

forward. He said he understood the shipyard had to do some scoping on their second shiplift before they could determine what was needed. Assemblymember Thompson requested he be provided information about the contract for bulk water with Mr. West. He said he understood it was never authorized by the Assembly. He thanked everyone for letting him go to Juneau and noted the pending problems with PERS and TERS. Assemblymember Thompson commented the Borough did not receive about $600,000 in property tax due to the senior citizen exemption mandated by the state. He said Representative Elkins had a bill before the Legislature to have the state reimburse 75 percent of that. Senator Stedman said the bill would be dead on arrival.

Mayor Salazar commented the Borough was going to have to deal with its employee health benefits soon before a crisis was reached with that situation.

Assemblymember Landis said the retirement and health insurance issues were very important and he believed the way the Borough dealt with health insurance needed to be changed. He noted something had to give regarding the escalating costs of the PERS/TERS issue, but stated it was unfortunate it was linked to the issue on education funding. He expressed his hope the Assembly would continue to honor its commitment to the White Cliff Redevelopment Committee.

Assemblymember Painter said he was pleased the Wards Cove land sale procedures were finally approved and said he looked forward to selling the land.

Assemblymember Shay thanked everyone who participated in the Ketchikan Legislative Liaison Fly-In. He said he testified before a House Committee on behalf of the community dividend. He noted that people could testify from home using a special telephone number. Assemblymember Shay said it was wise of the Assembly to pass the timber resolution. He noted his admiration for former governor Wally Hickel. He noted the state was still trying to balance its budget on the back of municipalities and cited the PERS/TERS issue as an example. Assemblymember Shay announced WIR had scheduled a meeting in Seattle on May 25-26 and said he may be in the area at that time and may request permission from the Assembly to furnish lodging and per diem for several days for that meeting. He suggested Dick Coose may be a better representative of the Borough.

**Executive Session**—*Procedure: Motion is made and voted upon. If adopted, executive session is held. If necessary, action is taken in public session following the executive session. If there is more than one executive session topic, each topic will be handled completely separate from the other.*

<u>Request for an executive session to discuss potential claims regarding environmental groups' efforts to prevent re-starting of the veneer plant</u>

M/S Shay/Painter that the Borough Assembly declares that it is in the best interest of the Borough to discuss the claims and potential litigation relating to the efforts of environmental groups to prevent re-starting the veneer plant and to provide direction to the Borough's counsel in handling of these claims and potential litigation in executive session. In accordance with that finding, I further move that the Borough Assembly go into executive session in accordance with KGB Code Section 5.31.080(b)(2)(b) to discuss these potential claims and to provide the Borough's counsel with direction concerning them.

Upon roll call, the vote on the motion was:

YES:        PAINTER, SHAY, THOMPSON, TIPTON

NO:         LANDIS, KIFFER

ABSENT:    LYBRAND

MOTION DECLARED CARRIED.

The meeting convened in executive session at 9:09 p.m. and reconvened in open meeting at 9:43 p.m.

Mayor Salazar reported the Assembly provided staff with direction regarding the issues involved.

**Adjournment**—*The meeting must adjourn by 10:00 p.m. unless that deadline is extended to 10:30 p.m. by a motion approved by a majority of the assembly members present. Any extension beyond 10:30 p.m. requires a unanimous vote of all assembly members present. If the meeting is not adjourned or extended prior to 10:00 p.m., or such extended time as has been set, the meeting shall automatically recess at that time and shall be reconvened at 5:30 p.m. the following day.*

The meeting adjourned at 9:44 p.m.

ATTEST:

Borough Mayor

Borough Clerk

**APPROVED: April 4, 2005**