# KETCHIKAN GATEWAY BOROUGH
## AGENDA STATEMENT

NO **8b**

MEETING OF August 15, 2005

I hereby certify the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST: _Lauriett A Edwards_
Clerk Ketchikan Gateway Borough

| ITEM TITLE | REVIEWED BY |
|---|---|
| Consideration of resolution 1903 of the Assembly of the Ketchikan Gateway Borough authorizing the Borough Manager to dispose by sale certain portions of real property in West Ward cove to a LLC to be formed aka Ted Falconer; and providing for an effective date. | [ ] PLANNING COMMISSION<br>[ ] COMMITTEE - *<br>[ ] LEGAL<br>[X] FINANCE<br>[ ] OTHER _____ |
| SUBMITTED BY Managers Office<br>CONTACT PERSON/TELEPHONE<br><br>Roy Eckert      228-6625<br>NAME               PHONE | REVIEWED FOR SUBMITTAL<br><br>_signature_<br>BOROUGH MANAGER |

SUMMARY STATEMENT

The Borough has received a proposal from a LLC to be formed aka Ted Falconer to purchase certain portions of Borough property in U.S. Survey 1754, 1056, 2923, 1862, 1706, 3004, 3400, 3401, and ATS 3, 1, 1a and 1c1 in the West Ward Cove area also known as B-1, B-2, B-3, B-4, B-5, B-6, B-7, B-8, B-9, B-10, B-19, B-28, B-29, B-30, B-31, B-32, B-33, and B-34 as a unit for nine (9) million dollars with who pays closing costs still being negotiated.

This proposal was discussed at the Assembly meeting of August 1, 2005 and the Assembly requested that Mr. Falconer come to the August 15, 2005 meeting to continue discussions of his proposal. Mr. Falconer and Mr. Jenkins will be present at this meeting.

Summary Statement continued on next page:

RECOMMENDED ACTION:
Authorize the Manager and Attorney to negotiate the terms of the proposal of 9 million dollars and proceed to finalize the disposal by sale to a LLC to be formed aka Ted Falconer the properties listed in Exhibit A, with the stipulation that the property will be sold as subdivided, and following all conditions identified herein.

| FISCAL NOTES | | | |
|---|---|---|---|
| [ ] N/A | EXPENDITURE REQUIRED $* | AMOUNT BUDGETED $* | APPROPRIATION REQUIRED $* |
| EXHIBITS ATTACHED | | | |
| [X] RESOLUTION | [ ] ORDINANCE | [ ] CONTRACT | [ ] MINUTES |
| [X] PLAN/MAP | [ ] REPORT | [ ] LIST | [X] OTHER  Exhibit A to E |
| | | | Recitals E & F |

RECOMMENDED MOTION:

There is a motion on the Floor "M/S Tipton/Kiffer to adopt Resolution No. 1903".



EXHIBIT 5    1

The Borough tried on two separate occasions to sell these parcels with no success. The entire package of properties was for offered for sale as one-unit from March 21, 2005 to April 15th at 85% of the assessed value, with the stipulation that the property will be sold as subdivided. The sale of B-1, B-2, B-3, B-4, B-19 together with option to purchase all or parts of tidelands B-9 and B-10 was advertised from April 15, 2005 to May 10, 2005. In both of these cases the Borough advertised in Anchorage Daily News, Ketchikan Daily News and Northwest classified including their web listing with no offers received. Property Management kept a mailing list of parties interested in Ward Cove properties for the previous 2 years and mailed sale information to those parties both times.

This method was recommended by the Land Sale Ad Hoc committee and the Borough Lands Committee. The committee identified that the highest and best use for these parcels is to offer for sale all the West Ward Cove properties that are not necessary for general public/government use, with very few exceptions to one buyer. Exhibit "A" lists the parcels available for sale and the excepted parcels.

Staff has identified certain parcels that need to be excluded from the sale, B-36, B-37, B-38 and B-35. These are the primary and secondary sewer system components at the mill site to be reserved for future use by the Borough/City sewer system. There has been an interest expressed and a need identified for future use of this system. The aeration basin lies between these systems along with the Borough's new sludge press plant and adjacent public works garage, which would also be exempted. The parcel B-35 is designated for the North Tongass Fire Department station which has recently received funding for construction. This places most of the government/public use facilities in the same location making the sale of the rest of the properties in the highest and best use category. Utility, access and egress easements through these areas to the other parcels will also be reserved.

When determining if this sale will benefit the Borough, staff researched the acquisition of these parcels by the Borough in order to make a recommendation to the Assembly that the sale of these parcels for this price is in the best interests of the Borough and is reasonable. One issue is the Borough's investment. In looking at the larger picture of total property acquisition in Ward Cove and associated properties in Mud Bay, Carrol Inlet, Thorne Arm, Sumner Straight, Moser Bay, and an interest in a University of Alaska parcel, we received properties as a result of our outlay of a $7 million loan, a $2.9 million Foothill Foreclosure, $560,060 TyMatt Deed of Trust and $2.5 DIP loan for a total investment of $12,960,060. Add to that the cost of Administration remodeling at $1,076,506 and other operations costs the last 3 years of $1,834,967, the Borough's total investment is $15,871,533. Balance that with the assessed value of parcels we are retaining of $2,194,100, receiving of $1,155,000 to date for parcels sold, anticipated minimum value of the August 4, 2005 property auction of $4,085,100 and this sale of $9 million and the Borough comes out plus $562,667. Where we reap huge benefits is in the annual projected property taxes on all these properties of $169,488 and no longer expending money on operations and maintenance.

At the Gateway auction the Borough made an agreement with Foothill to acquire the veneer plant building, the steam chests and six parcels of real property for $2 million and some additional terms. The agreement assigned a nominal value of 75%, or $1.5 million to the veneer equipment and building and contents and 25%, or $500,000 to all the land. The funds spent on the debt purchase program and the $2 million veneer study were not funds spent on acquisition of real property so the costs aren't factored in.

Some of the properties we are retaining include one in Moser Bay we are using for wetlands mitigation, another in Moser Bay we are keeping as future access to adjacent Future development, B-35 in Ward Cove saves tax payers the cost of purchasing a site for a fire station, retaining an interest in the University land for future educational use. All of these parcels have value well beyond just the assessed values in terms of meeting community needs in a broader sense and in the case of the wetlands providing financial value as well.

The properties in this proposals return to the tax rolls, using a mill rate of 7.5% would result in $138,850 per year in tax revenues. Combined with the return of the properties in the upcoming auction to the tax rolls of $30,638 annually results in total tax revenue of approximately $169,488 per year. The Borough could really use this steady infusion to balance their budgets burgeoning costs in other areas.

There is also the ancillary benefit from operating a veneer plant that come in several forms. There is the direct economic benefit of local employment, both direct employment by the veneer plant (estimated by Falconer to be 41-45 persons) and indirect employment of timber fallers and transportation industry personnel. The additional demand for electrical power increases the revenues to KPU electrical division, thus reducing the need for increased rates to meet KPU revenue needs. The Borough also has overhead costs associated with holding the property including a portion of the maintenance and security needs, some electrical power costs, and liability insurance costs.

The total of these with respect to the veneer property were estimated to be between 30 and $40,000 per year, although the savings from these avoided costs are not all predictable straight line reductions. With the entire mill site and pipeline included the avoided costs are much higher.

To facilitate the sale of the properties, there are several steps involved, some of which can happen simultaneously. The staff recommends the following:

   a. The parcels affected would be re-platted prior to sale to separate out the retained parcels and memorialize easements or roadways to service the retained parcels.
   b. Terms of sale to be 9 million dollars cash at closing, with a four hundred fifty thousand dollar ($450,000) promissory note upon execution of this agreement, final purchase and sale agreement by August 31st, fifty thousand dollars ($50,000.00) non-refundable deposit upon signing of purchase and sale agreement to be in the form of cash, cashier's check or restricted certificate of deposit and closing within 90 days of execution of purchase and sale agreement. Should this offer be rejected by the Borough Assembly, all will be returned to the buyer.
   c. Sale will not include parcels B-35, B-36, B-37, B-38 set aside for public/government use, including necessary easements and/or right-of-ways.
   d. Failure to meet these terms voids the sale and the Borough may re-sell the property.
   e. All leases on west side properties transfer with the sale and are subject to terms of each individual lease.
   f. Cost for survey and re-plat will be split between the buyer and seller.
   g. Sales shall be by warranty deed subject to existing leases, easements and encumbrances.

Attached Exhibit A lists the parcels that are available for sale and lists those excepted from the sale as mentioned above. Attached Exhibit B shows the locations of the parcels listed in Exhibit A.

In conclusion, with this sale and the upcoming auction the Borough will get all this property back on the tax rolls except for 4 parcels being retained, the current lease holders could continue their operations, put the parcels back in private hands, the Borough no longer has the large expense of ongoing maintenance and operations of the properties, the Borough receives a much needed steady infusion to the General fund in the form of an additional $169,488 in annual property tax, and most significantly of all we add to Ketchikan's economic development in a big way by addition of jobs for the veneer mill and other potential businesses locating on the west side of Ward Cove, and potentially more jobs and new businesses with the sale of properties in the upcoming auction on the east side of Ward Cove.

KETCHIKAN GATEWAY BOROUGH

RESOLUTION NO. 1903

A RESOLUTION OF THE ASSEMBLY OF THE KETCHIKAN GATEWAY BOROUGH, ALASKA, AUTHORIZING THE BOROUGH MANAGER TO DISPOSE BY SALE CERTAIN PORTIONS OF REAL PROPERTY IN WEST WARD COVE TO A LLC TO BE FORMED AKA TED FALCONER; AND PROVIDING FOR AN EFFECTIVE DATE..

## RECITALS

A.   WHEREAS, the Ketchikan Gateway Borough recognizes that the certain portions of U. S. Survey 1754, 1056, 2923, 1862, 1706, 3004, 3400, 3401, and ATS 3, ATS 1, ATS 1a, ATS 1c1 are not currently on the tax rolls; and

B.   WHEREAS, the Ketchikan Gateway Borough desires to get these parcels on the tax rolls; and

C.   WHEREAS, having these parcels in private versus government hands encourages the economic growth of some businesses; start of new businesses into the community and an overall increase in year round jobs positively affecting economic growth and stability serves the Ketchikan Gateway Borough's economic development interests; and

D.   WHEREAS, most of the Ward Cove parcels are not required for current Borough purposes. Portions of parcels that are needed for Borough purposes are the Public Works garage, 3 primary and secondary clarifiers basins, effluent neutralization system and the sludge drying facility, will be exempted from the sale; and

E.   WHEREAS, the Ketchikan Gateway Borough has twice advertised these properties for sale and received no bids or proposals for the properties in their entirety or selling half it all together; and

F.   WHEREAS, a L.L.C. has made an offer to purchase the real and personal property covered by the lease purchase agreement as well as those parcels identified on Ward Cove property sales maps as parcels B-1, B-2, B-3, B-4, B-5, B-6, B-7, B-8, B-9, B-10, B-19, B-28, B-29, B-30, B-31, B-32, and the dam and pipeline B-33, and B-34, which properties are herein collectively referred to as the west side of Ward Cove, for the sum of $9 million dollars; and

G.   WHEREAS, the Assembly approval by resolution would be required for the Borough to accept the offer to purchase of the West side of Ward Cove for $9 million dollars ($9,000,000.00) as described in recital E; and

H.   WHEREAS, a L.L.C. is willing to put up four hundred fifty thousand dollar ($450,000) promissory note as defined in the recital F upon execution of this agreement, final purchase and sale agreement by August 31ˢᵗ, fifty thousand dollars ($50,000.00) non-refundable deposit upon signing of purchase and sale agreement to be in the form of cash, cashier's check or restricted certificate of deposit and

4

closing within 90 days of execution of purchase and sale agreement, pending Assembly approval of the purchase as defined in the recital E; and

I.      WHEREAS, the Borough management desires to culminate a deal with a L.L.C. to be formed for the sale of the west side of Wards Cove as described in the first Whereas;

NOW, THEREFORE, IN CONSIDERATION OF THE ABOVE FACTS, IT IS RESOLVED BY THE ASSEMBLY OF THE KETCHIKAN GATEWAY BOROUGH, ALASKA as follows:

Section 1.  The Assembly finds, pursuant to Ketchikan Gateway Borough Code Sections 40.15.070 and 40.18.010, that it is in the Borough's best interests to dispose of the land described in recital E and depicted on exhibits A and B by sale for $9,000,000 cash to a LLC to be formed by Ted Falconer for the acquisition of the property.

Section 2.  The Assembly directs the manager and attorney to negotiate the disposal by sale of the specified Ward Cove parcels in the following manner:

1. The LLC to be formed will pay to the Borough the sum of nine million dollars ($9,000,000) cash at closing, with a four hundred fifty thousand dollar ($450,000) promissory note upon execution of this agreement, final purchase and sale agreement by August 31st, fifty thousand dollars ($50,000.00) non-refundable deposit upon signing of purchase and sale agreement to be in the form of cash, cashier's check or restricted certificate of deposit and closing within 90 days of execution of purchase and sale agreement. The final purchase and sale agreement shall be subject to Assembly approval. Should this offer be rejected by the Borough Assembly, all will be returned to the buyer.

2. Should the Borough Assembly reject the offer to purchase the West side of Ward Cove and authorize a counter offer, the LLC may elect to accept the counteroffer or may reject it.

3. Authorize the Manager to proceed with a re-plat of West Ward Cove prior to being offered for sale.

4. Sale will not include parcels set a side for public/government use, including necessary easements and/or right-of-ways.

5. All existing leases on these parcels are subject to terms of their lease, and the leases transfer with the properties.

6. Cost of the re-plat and survey of the property will be split between the Borough and the buyer.

7. The Borough Manager and Attorney will negotiate who will pay for the closing costs.

8. Sale shall be by warranty deed subject to existing leases, easements and encumbrances.

Section 3. This resolution is effective immediately.

ADOPTED this _____ day of _____, 2005.

_____
BOROUGH MAYOR

ATTEST:

_____
BOROUGH CLERK

Approved as to form:
*[signature]*
BOROUGH ATTORNEY

| EFFECTIVE DATE: | | | |
|---|---|---|---|
| ROLL CALL | YES | NO | ABSENT |
| KIFFER | | | |
| LANDIS | | | |
| LYBRAND | | | |
| PAINTER | | | |
| THOMPSON | | | |
| TIPTON | | | |
| SHAY | | | |
| MAYOR (Tie Votes Only) | | | |
| 4 AFFIRMATIVE VOTES REQUIRED FOR PASSAGE | | | |

6

| Borough West Ward Cove Properties For Purchase | | | | | | |
|---|---|---|---|---|---|---|
| | | Acres | Classification | Zoning | | |
| **Eligible for sale** | | | | | | |
| B-1 | Portion of USS 1056 lot 3 | 4.55 | Econ Dev | | | |
| B-2 | 7559 N. Tongass    parking lot | 2.089 | Econ Dev | IH | | |
| B-3 | 7559 N. Tongass    land + Imp | 3.636 | Econ Dev | IH | | |
| B-4 | USS 1056 lot 3 portion, 7559 block, land+imp | 20.65 | Industrial Land | IH | | |
| B-5 | 7700 blk N. Tongass | 13.87 | Industrial Land | IH | | |
| B-6 | 7700 Block of N. Tong | 2.48 | Econ Dev | IH | | |
| B-7 | USS 1706, mill site | 4.33 | Industrial Land | IH | | |
| B-8 | Tract 3004 Lot 1, Brusich Road, (donut) | 39.64 | vacant land | CG | | |
| B-9 | 7559 block N. Tongass    tidelands | 123.70 | Industrial Land | IH | | |
| B-10 | 7559 block N. Tongass    tidelands | 32.80 | Industrial Land | IH | | |
| B-19 | OATS Lot 1 Portion 2, dock and land | 1.189 | Industrial Land | IH | | |
| B-28 | USS 1862 Ptn 1, 7037 block    land | 13.13total | Industrial Land | IH | | |
| | USS 1862 sawmill Imp | bldg | Econ Dev | IH | | |
| | USS 1862 veneer Imp | bldg | Econ Dev | IH | | |
| | and a portion of ATS 1a | | Industrial Land | IH | | |
| B-29 | portion USS 1056 lot 3, 7600 block    +Imp | 12.78total | Econ Dev | IH | | |
| | portions of USS 1862 and ATS 1c1 | | Industrial Land | IH | | |
| B-30 | Portion 1056 lot 3 | 4.37 | Econ Dev | IH | | |
| B-31 | USS 1056 ptn 1 7200 block    pipeline | 5.16 | Industrial Land | IH | | |
| B-32 | USS 2923 PTN, 7100 Block    pipeline | 4 | Industrial Land | IH | | |
| B-33 | USS 3401 Connel Dam Pipeline    land | 66.93 | Industrial Land | FD | | |
| B-34 | USS 3400 Connel Lake Dam and land | 16.528 | Industrial Land | FD | | |
| | | | | | | |
| **RETAINED by the Borough** | | | | | | |
| B-35 | USS 1056 ptn 2, 7600 block | 6.39 | Econ Dev | IH | for Fire Station | |
| B-36 | Portions of USS 1754 and USS 1056 | 4.19 total | Industrial Land | IH | future Boro/City sewer system | |
| | and portion of ATS 1c1 | | | IH | " | |
| B-37 | Portion of 1754 and ATS 1c1 | 4.13total | Industrial Land | IH | " | |
| B-38 | Portion of 1754 and ATS 1c1 | 2.2 total | Industrial Land | IH | " | |

lm    7/26/2005

7

Exhibit "A"
Resolution 1903
West Ward Cove Purchase







Exhibit C
Resolution 1903

## ANNUAL EXPENSES for Ward Cove Properties

| Areas: | FY 02/03 | FY 03/04 | FY 04/05 | FY 05/06 | |
|---|---|---|---|---|---|
| fees, permits, contracts | $ 102,927 | $ 38,524 | $ 39,334 | $ - | |
| 5100 to 6600, wages etc. | $ 120,470 | $ 249,680 | $ 494,160 | $ 488,086 | |
| docking | $ 380,407 | $ 179,908 | $ 68,830 | $ 56,319 | |
| Connel Lake Dam | | $ 8,533 | $ 62,756 | $ 67,766 | |
| NPDES Permit | | $ 24,300 | $ 59,310 | $ 8,713 | |
| Admin building O/M | | $ 31,786 | $ 1,050,548 | $ 73,669 | |
| | | | | $ 694,553 | estimates |
| | $ 603,804 | $ 532,731 | $ 1,774,938 | | |

total to date | $ 2,911,473
$(1,076,506) admin rmdl
$ 1,834,967

Exhibit D
Resolution 1903

From:TF INC. 253 858 6356 07/28/2005 13:40 #022 P.002
Case 1:05-cv-00017-RRB   Document 25-6   Filed 01/05/2006   Page 11 of 14

JUL-28-2005  12:02         KTN GTEWAY BOROUGH                    9072471625         P.02/03

AGREEMENT FOR PURCHASE OF REAL

AND PERSONAL PROPERTY IN THE WARDS COVE AREA

WHEREAS a L.L.C,. has made an offer to purchase the real and personal property covered by the lease purchase agreement as well as those parcels identified on ward cove property sales maps as parcels B-1, B-2, B-3, B-4, B-5, B-6, B-7, B-8, B-9, B-10, B-19, B-28, B-29, B-30, B-31, B-32, and the dam and pipeline (B-33, and B-34), which properties are herein collectively referred to as the west side of Ward Cove, for the sum of $9 million;

WHEREAS Assembly approval by resolution would be required for the Borough to accept the offer to purchase of the West side of Ward Cove for $9 million dollars ($9,000,000.00) as described in the first Whereas;

WHEREAS a L.L.C. is willing to put up fifty thousand dollars ($50,000.00) cash, or cashier's check or restricted certificate of deposit as earnest money pending Assembly approval of the purchase as defined in the first Whereas;

WHEREAS the Borough management desires to culminate a deal with a L.L.C. to be formed for the sale of the west side of Wards Cove as described in the first Whereas;

NOW THEREFORE, the LLC to be formed and the Ketchikan Gateway Borough (hereinafter Borough) agree as follows:

1. The LLC offers to purchase the property described above, as is, subject to existing leases and easements, and subject to access and utility easements to be platted serving property retained by the Borough, for the sum of nine million dollars ($9,000,000).

2. The LLC to be formed will pay to the Borough the sum of four hundred fifty thousand dollar ($450,000) promissory note upon execution of this agreement, final purchase and sale agreement by August 31st, 2005, fifty thousand dollars ($50,000.00) non-refundable deposit upon signing of purchase and sale agreement to be in the form of cash, cashier's check or restricted certificate of deposit and closing within 90 days of execution of purchase and sale agreement. Should this offer be rejected by the Borough Assembly, all will be returned to the buyer.



Recital E
Resolution 1903

From:TF_INC. 253 858 6356 07/28/2005 13:40 #022 P.003
Case 1:05-cv-00017-RRB    Document 25-6    Filed 01/05/2006    Page 12 of 14

JUL-28-2005  12:03    KTN GATEWAY BOROUGH    9072476625    P.03/03

3. Should the Borough Assembly reject the offer to purchase the West side of Ward Cove and authorize a counter offer, the LLC may elect to accept the counteroffer or may reject it.

Agreed, subject to the conditions above.

Ketchikan Gateway Borough:

By:_____            By: /s/ Theodore E. Falconer
    Roy Eckert                              Ted Falconer
    Borough Manager                         LLC President

Date:_____          Date: 7/28/05

12

Recital E
Resolution 1903



Renaissance Prospect Group LLC
3695 S Jojoba Way
Chandler, AZ 85248
480 786 1455
480 786 1460 F
jerry@jenkins.org

# PROMISSORY NOTE

*$450,000 (Four Hundred Fifty Thousand Dollars)*

Chandler, Arizona
August 1, 2005

FOR VALUE RECEIVED, the undersigned (hereinafter called "Maker") promises to pay to the order of the Borough of Ketchikan, in Ketchikan, Alaska or at such other place as the holder hereof may from time to time designate in writing, the principal sum of FOUR HUNDRED FIFTY THOUSAND NO/100 DOLLARS ($450,000.00), to be paid in lawful money of the United States of America, on the first to occur of the following dates:

(a) Buyer waives all contingencies, or;

(b) At Closing

This Note is executed pursuant to that Letter of Intent / Agreement to Purchase between an LLC (to be formed) and the Borough of Ketchikan dated August 1, 2005, between Maker and the payee hereof. Note is null and void if Letter of Intent is terminated in conjunction with all terms.

Maker shall have the option to prepay this Note, in full or in part, at any time without penalty.

Time is of the essence of this Note. At the option of the holder hereof, the entire unpaid principal balance shall become immediately due and payable without notice upon the occurrence of any Event of Default as defined in any of the Security Documents.

After maturity, including maturity upon acceleration, the unpaid principal balance shall bear interest at a per-annum rate equal to twelve percent (12%). Maker shall pay all costs and expenses, including reasonable attorneys' fees and court costs, incurred in the collection or enforcement of all or any part of this Note. In the event of any court proceedings, court costs and attorneys' fees shall be set by the court and not by the jury and shall be included in any judgment obtained by the holder hereof.

99

13

Recital F
Resolution 1903

Failure of the holder to exercise any option hereunder shall not constitute a waiver of the right to exercise the same in the event of any subsequent default or in the event of continuance of any existing default after demand for strict performance hereof.

Maker, sureties, guarantors and endorsers hereof: (a) agree to be jointly and severally bound, (b) severally waive any homestead or exemption right against said debt, (c) severally waive demand, diligence, presentment for payment, protest and demand, and notice of extension, dishonor, protest, demand and nonpayment of this Note, (d) consent that the holder hereof may extend the time of payment or otherwise modify the terms of payment of any part or the whole of the debt evidenced by this Note, at the request of any other person primarily liable hereon, and such consent shall not alter nor diminish the liability of any person, and (e) severally waive any setoff right against said debt.

This Note shall be binding upon Maker and its successors and assigns and shall inure to the benefit of the payee hereof and any subsequent holders of this Note, and their successors and assigns.

This Note shall be governed by and construed according to the laws of the State of Arizona.

IN WITNESS WHEREOF, these presents are executed as of the date first written above.

RENAISSANCE PROSPECT GROUP LLC
a Arizona limited liability company

By_____

Name: Jerry Jenkins
Managing Member

**MAKER**

14

Recital F
Resolution 1903