I hereby certify the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST: /s/ [signature]
Clerk Ketchikan Gateway Borough

# KETCHIKAN GATEWAY BOROUGH

## Regular Assembly Meeting

**August 15, 2005**

**Call to Order—Pledge of Allegiance—Roll Call**

The regular meeting of the Ketchikan Gateway Borough Assembly was called to order at 5:30 p.m., Monday, August 15, 2005, by Mayor Salazar in the City Council Chambers.

PRESENT:    LYBRAND, TIPTON, LANDIS, KIFFER, PAINTER, SHAY, THOMPSON [via teleconference]

ABSENT:     NONE

The staff present included Manager Eckert, Assistant Manager Corporon, Attorney Brandt-Erichsen, Comptroller Crosby, Public Works Director Voetberg, Project Manager Boyd, Accounting Supervisor Heath, Property Manager Machado, North Tongass Fire Chief Hull and Clerk Edwards.

**Ceremonial Matters**—*Presentations, Proclamations, Awards, Guest Introductions*

Proclamation—*Armed Forces Appreciation Weekend, August 20-21, 2005*

Mayor Salazar read the proclamation and directed the Clerk to send it to the appropriate parties.

**Citizen Comments**—*Comments on any topic other than scheduled public hearings.*

Alaire Stanton and Kim Judge, White Cliff Re-development Project, thanked the Assembly for its support and urged passage of Resolution No. 1907. Ms. Judge provided an update on the progress of the re-development project and responded to questions from the Assembly.

Karen Eakes, PatchWORKS Executive Director, announced upcoming events sponsored by her organization and distributed an information handout on those events. She invited the Assembly and Borough employees to attend the presentations.

Susan Doherty, a citizen of the Borough, urged the Assembly to see that Schoenbar School was opened as soon as possible and noted most parents would be willing to have school start at a later time in order to accommodate the opening.

Donald Westlund, a citizen of the Borough, said the Borough should not accept bids for less than the assessed value of the property at the Wards Cove site. He also stated the North Tongass Service Area tax assessment was unfair because it assessed more on the higher priced properties. He felt everyone should pay the same amount for fire and EMS services. Mr. Westlund responded to Assembly questions.

Roger Stone, Alliance Realty, thanked the staff for its work on the auction of land at Wards Cove. He urged the Assembly to keep in mind the assessed valuation on land was the best guess of the Assessment Department and the Assembly should give consideration to bids received for less than the assessed value and accept them. Mr. Stone cautioned the Assembly during its deliberations on the proposal received from Mr. Falconer. He said the Assembly had to be careful that a lot of money did not get in the way of seriously considering the actual realizable value of the property. He answered questions from Assemblymembers.

Captain John Falvey, General Manager of the Alaska Marine Highway System, stated AMHS was very interested in purchasing the Wards Cove Administration Building and was willing to negotiate the purchase. He noted AMHS was also interested in constructing a barge lay-up facility on Borough uplands and tidelands

known as B-36, B-37 and B-38 and was willing to negotiate a lease with an option to buy that property. Mr. Falvey advised the state would prefer to negotiate with the Borough rather than a developer.

Ron Stout, a citizen of the Borough, said the Assembly should sell land at Wards Cove in order to create jobs for the community.

Bill Goodale, mechanical contractor on the Schoenbar School Remodel, informed the Assembly the mechanical systems on the project were completed last week. He said the building was ready mechanically for students and staff. Mr. Goodale went on to provide technical information about air balancing and other aspects of his trade. He noted the article in the newspaper was misleading and went on to respond to Assembly questions.

Doug Ward, Alaska Ship and Drydock, thanked the Assembly for its years of support for the shipyard project. He said it truly had been a public/private project. He urged Assembly approval of the memorandum of understanding that was on the agenda. Mr. Ward said he expected to receive additional information which would amend Resolution No. 1908 and requested the Assembly allow the amendments to be included after passage.

RECESS:

The meeting recessed at 6:26 p.m. and reconvened at 6:42 p.m.

**Public Hearings**—*Procedure: Citizens will sign up on a sheet and testify in the order that they sign up. Citizens may present arguments in favor or in opposition; staff report update, if any; close the public portion of the hearing and the assembly deliberates and renders a decision on the matter at hand.*

Ordinance No. 1367 AMENDED authorizing the issuance of general obligation bonds (payable also from sales tax revenue) in an amount not to exceed $1.1 million to finance a plan of capital improvements to school facilities of the Borough; and providing for the submission to the qualified voters of the Borough at the regular election to be held on October 4, 2005, of a proposition approving this ordinance and ratifying the authorization of said bonds

There was no public testimony.

M/S Painter/Kiffer to adopt Ordinance No. 1367 Amended.

Upon roll call, the vote on the MOTION was:

YES:	SHAY, LANDIS, PAINTER, THOMPSON, TIPTON, KIFFER

NO:	LYBRAND

MOTION DECLARED CARRIED.

**Scheduled Informational Reports and/or Presentations**—*Reports on construction progress, financial status, presentations of budgets, audits, and reports or planning documents and related items.*

Board of Education Report

Board President Schafer said the district had a serious need to know what was going to occur in regard to the opening of Schoenbar School. She said if there was going to be a late opening and a calendar change had to be made, the board had to approve the change and the Department of Education and Early Development had to provide its permission. She stressed that the parents and students needed to know when the school was going to be open. Ms. Schafer answered questions from the Assembly and Manager Eckert explained the process for substantial completion acceptance and a certificate of occupancy. Manager Eckert responded to questions and

Regular Assembly Meeting
August 15, 2005 – Page 2

read from an e-mail from McGraw Construction in which August 23 was designated as the date for inspection of the facility. Manager Eckert said there were some issues with the project that needed to be the subject of a work session after the inspection was done. Project Manager Boyd entered the discussion and responded to questions.

**Acceptance of Claims**

M/S Tipton/Shay to accept the Ketchikan Gateway Borough claims for the period of July 27 through August 8, 2005, and wire transfers for the period of July 27 through July 29, 2005, in the amount of $621,901.89.

Assemblymember Painter requested to be allowed to abstain from voting on Check No. 1298 in the amount of $775.10 payable to his company. Mayor Salazar ruled Assemblymember Painter did not have a conflict. There was no objection.

Assemblymember Kiffer asked for an explanation for the late changes paid to Panhandle Rigging on Check No. 12887-4226 and a breakdown of the tickets covered under the check to Alaska Airlines. Mayor Salazar said Manager Eckert would provide the information.

Upon roll call, the vote on the MOTION was:

YES:    PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:     NONE

MOTION DECLARED CARRIED.

**Consent Calendar**—*Matters listed under the consent calendar are considered to be routine and will be enacted by one motion and one vote. There will be no separate discussion on these items. Platting or zoning items that are subject to court appeal may not be listed on the consent calendar. If the Mayor or an Assembly Member requests discussion, that item will be removed from the consent calendar and will be considered under Unfinished Business.*

Motion to approve the regular meeting minutes of August 1, 2005; as presented

M/S Tipton/Painter to adopt the Consent Calendar as presented.

Upon roll call, the vote on the MOTION was:

YES:    LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON, TIPTON

NO:     NONE

MOTION DECLARED CARRIED.

**Unfinished Business**

Transferred Consent Calendar—NONE

Consideration of Resolution No. 1903 authorizing the Borough Manager to dispose by sale certain portions of real property in west Wards Cove to a LLC to be formed by Ted Falconer [postponed on August 1, 2005]

There is a motion on the floor: M/S Tipton/Kiffer to adopt Resolution No. 1903.

Consideration of proposal letter from the Alaska Marine Highway System dated August 9, 2005—Assemblymembers Landis and Tipton

M/S Tipton/Painter to move the agenda items dealing with Resolution No. 1903 and the letter from the Alaska Marine Highways System to the end of the New Business items, including an executive session for the purpose of negotiations for an agreement.

MOTION DECLARED CARRIED VIA VOICE VOTE.

Consideration of Resolution No. 1911 authorizing the Borough Manager to enter into a Memorandum of Understanding with Pacific Log and Lumber Limited setting down terms for construction reimbursement of a portion of the Lewis Reef Road
[Discussion concerning the request from Pacific Log and Lumber for the Borough to assume ownership of the portion of the Lewis Reef Road that was constructed by Pacific Log and Lumber —postponed on August 1, 2005]

M/S Lybrand/Painter to adopt Resolution No. 1911.

Assemblymember Kiffer noted when the issue was first discussed several years ago the figure was $500,000 but it had increased considerably since that time. Manager Eckert reviewed the history of the road and said the figure settled on was $800,000. A brief discussion was held on the terms of the letter of agreement with Pacific Log regarding payment to Pacific Log if the permit was terminated. Manager Eckert said at the time of the agreement it was believed the road use fees would cover all costs.

M/S Lybrand/Landis to amend Resolution No. 1911, to add E. under Recitals: "Whereas, prior to authorization of payment by the Borough for the balance of any uncollected and/or unpaid costs of the road, a special assessment district will be formed showing the costs to be borne by all parties who benefit from this road."

Assemblymember Landis pointed out the August 1 agenda item indicated at that time the staff needed more time to acquire all the information needed to make a final determination in the matter. He asked Manager Eckert if he could provide more information on the answers to the unanswered questions from August 1. Manager Eckert said at that time Director Houts was waiting for one final piece of information on the costs associated with the road. Manager Eckert said there were questions concerning whether or not the U.S. Forest Service could pay for the upgrades on the bridges and the road, if the road was private or if the road became public. He said last Friday he was told the road would have to remain private; however, this afternoon he received word the funds were not Forest Service funds but were U.S. Highway Department funds and had to be used on a public road.

Assemblymember Thompson asked Manager Eckert if he had anything in writing from the Forest Service regarding if the road would be improved. Manager Eckert said he did not have anything yet. Assemblymember Thompson asked if the Borough would receive any log transfer fees from logs coming off the Bostwick and Forest Service timber sales on Gravina. Manager Eckert responded said the Forest Service would participate in road upgrades but not both road upgrades and fees. He said he believed it would be better to receive the road upgrades. Assemblymember Thompson asked if the state would pay road use fees and Manager Eckert said yes, but he did not know the amount.

Steve Seley, Pacific Log and Lumber, said the state had two timber sales: the Bostwick 1 of about 20 million board feet, and the second sale was about 5 million board feet. He said the road use fee, using a figure of $10, would be about $250,000.

Assemblymember Lybrand interjected there had to be a special assessment district for the people who would benefit from the development. He said that was why he wanted to tie it into the whole negotiation process. Manager Eckert pointed out revenue could also be obtained from royalties on the rock from the rock pit.

Assemblymember Thompson agreed with Assemblymember Lybrand about the special assessment district, but said it was important to know the net cost of the project would have to be spread among the owners. He noted that figure may not be available for several years.

Assemblymember Lybrand distributed a map showing the road he was constructing on Gravina Island and the realignment that was going to be done. Assemblymember Lybrand explained the new alignment and the portions to be paid for by the state and by the Forest Service. Assemblymember Tipton said he had not seen anything to consider.

Assemblymember Landis reiterated his question on how the Assembly was now being presented with a recommendation on the road. He asked how the Assembly would know what the Forest Service would provide without something in writing. Assemblymember Landis asked if Manager Eckert felt comfortable if that was a part of the negotiations and Manager Eckert said it had to be. Assemblymember Landis again pointed out the questions in the August 1 agenda statement apparently were not resolved. Manager Eckert said he planned to get the Forest Service commitment in writing. He added it appeared DOT/PF would not upgrade the road. Manager Eckert said he did not believe the Borough would have any control over the Forest Service acquisition of rights from the state to use the road. He said the road had to be public and timing was critical because the funds available from the Forest Service would expire at the end of the fiscal year. Manager Eckert noted the road would be worth whatever the parties agreed it was worth and said Director Houts had the financial information on it. He stated he did not know what it would cost to improve the road to public road standards. Manager Eckert said he was told the Forest Service would improve the road to two lanes with approaches at the intersections.

Assemblymember Kiffer requested a figure on the road improvements. Several people stated the Borough would not do the improvements; the Forest Service would do them.

Assemblymember Tipton asked if Manager Eckert had seen anything in writing that showed the connection of the new road construction to the end of the Lewis Reef Road. Manager Eckert said he had only seen preliminary maps on it. Assemblymember Tipton asked about the other end of the road and Manager Eckert said it went down to the LTF and was short about 200 or 250 feet. Assemblymember Tipton noted that connection was part of the agreement the Assembly was being asked to buy out. Assemblymember Lybrand noted that would be one of the conditions. Assemblymember Tipton then asked about the time limit on the Forest Service money and Manager Eckert responded he just found it out on Friday and it was not in writing. Assemblymember Tipton said a decision to spend $650,000 was being requested when there were no answers to his questions. Assemblymember Lybrand said the resolution said to conduct negotiations and it would come back to the Assembly.

Steve Seley said the last 180 feet of the road was not built at the request of DOT/PF. He said they had a better alignment so it was not built. He pointed out the agreement said the road went to the wye of the Bostwick Road and he was there. Mr. Seley said if a person stood on the road and took one step they would be on Borough property. He said he did his job and built the road and this was the last meeting he was going to come to and discuss it peacefully. He noted the Forest Service had already delivered a bridge to the site. He said he confirmed with the Forest Service that they would not upgrade a private road.

Assemblymember Tipton said at the time the agreement was discussed it was the intent to not spend any money on the road because road use fees were going to cover the costs. Mr. Seley disagreed with Assemblymember Tipton and said he had gone beyond the scope of what he agreed to do.

Assemblymember Landis asked about the formation of a special assessment district. Manager Eckert said it would be the correct thing to do but the timing was very poor. He said if any action on the item was delayed then it could delay Mr. Seley's construction of the road to Bostwick. Assemblymember Landis said it appeared a special assessment district could be pursued at the same time negotiations with Mr. Seley were going on.

Assemblymember Painter asked if staff was currently working on a special assessment district and Manager Eckert responded yes but it would take some time to work out the details. He said his concern with the amendment was it indicated the buy out could not occur until the special assessment district was formed. He wanted to get the timber out of Bostwick and create jobs.

Assemblymember Tipton asked what the timber sale had to do with the issue. Manager Eckert said he understood funds were needed to do the road.

Assemblymember Lybrand said he would withdraw his amendment. Assemblymember Landis agreed.

Assemblymember Tipton said there was no guarantee funds would be made available because it could be the lowering of a debt burden on an existing note. Manager Eckert said that was one of the options.

Upon roll call, the vote on the MOTION was:

YES:        LYBRAND, SHAY, LANDIS, PAINTER

NO:         KIFFER, TIPTON, THOMPSON

MOTION DECLARED CARRIED.

Assemblymember Thompson said he was concerned because a lot of the information was not in writing and requested that before the issue went forward that documents be provided by the proper authorities such as DOT/PF and the Forest Service. He asked if the agreement would come back to the Assembly and Mayor Salazar said he would make sure that it did.

**New Business**

Consideration of a Memorandum of Understanding between the Alaska Industrial Development and Export Authority, the City of Ketchikan, Ketchikan Public Utilities and the Ketchikan Gateway Borough for development and operation of the Ketchikan shipyard

M/S Landis/Painter to authorize the Borough Manager to approve the Memorandum of Understanding between the Alaska Industrial Development and Export Authority, the City of Ketchikan, Ketchikan Public Utilities and the Ketchikan Gateway Borough for development and operation of the Ketchikan shipyard

Manager Eckert said he was the first one to sign the MOU.

Upon roll call, the vote on the MOTION was:

YES:        KIFFER, THOMPSON, PAINTER, SHAY, TIPTON, LANDIS

NO:         LYBRAND

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1905 accepting a donation from the Kayhi Swim and Dive Booster Club to the Borough for purchase of a competition quality diving board

M/S Kiffer/Painter to adopt Resolution No. 1905.

Assemblymember Landis thanked the Kayhi Swim and Dive Booster Club.

Upon roll call, the vote on the MOTION was:

YES:    SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:     NONE

MOTION DECLARED CARRIED.

Consideration of Resolution 1906 authorizing the Borough Manager to dispose by sale at fair market value as determined by outcry auction August 4, 2005, certain Borough parcels located in Ward Cove and Mud Bay Alaska

M/S Landis/Tipton to adopt Resolution No. 1906.

M/S Painter/Lybrand to amend to add: to advertise an offer on the four parcels that did not get up to minimum assessed bid for a public auction on August 31.

Assemblymember Painter said he did not believe it would be necessary to involve a professional auctioneer for the auction.

Mayor Salazar asked that the parcels be identified for the record and Assemblymember Lybrand said they were B-17, B-21, B-22, and B-27.

Assemblymember Painter added to his motion that the minimum opening bid would be the last bid at the Murphy auction.

Assemblymember Tipton requested an explanation and Assemblymember Painter said it was to advertise for the next two weeks to hold another local auction on August 31 for those four parcels. He reiterated the opening bid would be what was bid at the auction. Assemblymember Tipton asked if there was no bid that the bid received at the Murphy auction would be the acceptable bid. Assemblymember Painter responded correct.

Assemblymember Landis said he could not support the amendment because it strayed significantly from the method contemplated in the resolution as well as what was discussed by the ad hoc group of community members.

Assemblymember Thompson said he would prefer to see all the properties handled in the manner by an open listing for a period of time. He added he did not believe the listing should be for six months, but it should be open for at least 30 days to see if there was a higher bid. He noted people may not have attended the auction because of the assessed value limitation and by having an open listing those people may choose to participate. Assemblymember Thompson commented Section 1, Items A, B, and C should be re-written to conform to Item D. He also said another auction should not be necessary.

Assemblymember Painter stated the Borough changed the terms of the auction during the actual auction by accepting an opening bid of less than the assessed value.

Assemblymember Thompson said the change was not advertised and cautioned that future auctions with minimum bids would not be effective if lower offers were accepted by the Assembly.

Assemblymember Landis noted he did not believe the acceptance of bids lower than the minimum bid was contemplated in the resolution or the ad hoc committee. He said the intent of the auction was to establish a price.

Assemblymember Kiffer said he was opposed to the amendment but agreed the offers should be postponed a month to give everyone an opportunity to bid.

Assemblymember Lybrand suggested the parcels be advertised for 30 days with a minimum bid of the bids received, and to give the people who submitted the four bids the right of first refusal on any bids received. In response to Mayor Salazar, Assemblymember Lybrand said he assumed the other requirements would remain, i.e. required cashier's check, etc.

Assemblymember Tipton said he agreed with the suggestions except the Mud Bay parcel should be excluded because of the tidelands issue. He said the Borough might not be looking at the best value possible on it because of the clouded situation. He suggested it should be kept out of the mix until it was cleared up. Mayor Salazar interjected the buyer could clear it up.

Assemblymember Kiffer asked Attorney Brandt-Erichsen if the motion on the floor was workable and Attorney Brandt-Erichsen said he could help the Assembly with the wording. He noted he did not have a copy of Resolution No. 1881 which set out the procedure. He said the issue being discussed was an amendment to Resolution No. 1881 and as long as it was done in the form of a resolution and a finding made that it was in the best interest of the Borough, the staff could carry it out.

M/S Thompson/Painter to offer a dispository (substitute motion) amendment to put all the properties up for sale, open bid for 30 days, using the minimum bid that was received at the auction and if no bids were received in excess of what was bid, the people who bid originally have right of first refusal.

Assemblymember Lybrand asked if Assemblymember Thompson's intent was that if a person came in and offered $2 more than the minimum bid the first offeror had the right to buy the property for the minimum bid plus $2. Assemblymember Thompson replied that was correct.

Assemblymember Painter said he withdrew his amendment and Assemblymember Lybrand agreed.

Assemblymember Tipton asked if Assemblymember Thompson's motion would be the main motion and several members responded yes.

Assistant Manager Corporon asked for clarification for the benefit of staff. He said it was understood the parcels would be open for bid for thirty days by sealed bid. Assemblymember Lybrand responded right and Assemblymember Painter said sealed bids were not mentioned. Mayor Salazar said it appeared to be similar to a silent auction. Upon further questioning Assemblymember Lybrand said at the end of the 30-day period staff would bring the best offer in. Assemblymember Painter added the bidder at the Murphy auction had first right of refusal.

Manager Eckert asked for an explanation of an open listing. Assemblymember Thompson said the open listing would be over the counter at the Borough. He said his intent was the Borough could take bids on the properties for 30 days; bring the highest bid on each of the properties back and at that time the original high bidder at the original auction had the right of first refusal to purchase at that price if they so chose. He said if the original bidder did not exercise their right of first refusal then that offer became a new offer and the property would be sold to the offeror on the same terms and conditions. Several Assemblymembers responded that was correct.

Assemblymember Kiffer questioned why sealed bids would not be acceptable and Assemblymember Lybrand said the proposed method would give potential offerors the amount of the highest bid to-date.

Assemblymember Landis asked how Resolution No. 1881 dealt with over the counter sales. Manager Eckert said Resolution No. 1881 said that anything that did not sell would then go to open listing. He said it would be placed on the market. Assistant Manager Corporon said the intent was if the parcel did not sell then there would be no price and if an offer was received it would be given the Assembly for a decision. Manager Eckert said the open listing was to be for six months.

Assemblymember Painter said he wanted to be sure the sale was advertised in the media.

Assemblymember Tipton asked if the Borough had a need for parcel B-22 for trading stock at a future date. Manager Eckert said it probably would and noted any offers could be refused. He stated the Borough had to have the right to refuse any and all bids.

Assistant Manager Corporon said he understood there would be a tote board containing all the offers and anyone could come in and make a higher offer.

Assemblymember Landis expressed concern because the current motion was so far out of line with what was originally decided.

Assemblymember Shay spoke in favor of sealed bids and asked if it would be feasible to split B-22 into a number of parcels. Manager Eckert said the value of the property was in the portion that contained the hanger and briefly described the property.

Assemblymember Thompson reiterated his motion was dispository of the original motion.

M/S Lybrand/Shay to amend to change the open bid process to a sealed bid process.

Mayor Salazar said he believed the best prices were obtained by auction.

Upon roll call, the vote on the AMENDMENT was:

YES:    SHAY

NO:     LYBRAND, KIFFER, TIPTON, LANDIS, PAINTER, THOMPSON

MOTION DECLARED FAILED.

Upon roll call, the vote on the SUBSTITUTE MOTION was:

YES:    LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON

NO:     LANDIS, TIPTON

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1907 accepting a State Legislative Grant for the former White Cliff School Redevelopment Project

M/S Painter/Tipton to adopt Resolution No. 1907.

Assemblymember Shay thanked everyone who had worked so diligently on the project and said it was a wonderful opportunity for the community.

Upon roll call, the vote on the MOTION was:

YES:    THOMPSON, SHAY, TIPTON, LANDIS, LYBRAND, KIFFER, PAINTER

NO:     NONE

MOTION DECLARED CARRIED.

<u>Consideration of Resolution No. 1908 in recognition and appreciation of the efforts of Congressman Don Young to provide funds for Ketchikan community projects</u>

Mayor Salazar said he understood Doug Ward was going to provide the Clerk with more information for the resolution. He said the resolution could be passed with that caveat.

M/S Painter/Landis to adopt Resolution No. 1908.

M/S Painter/Tipton to amend to allow the Mayor or Clerk to amend the resolution with the changes provided by Doug Ward.

Upon roll call, the vote on the AMENDMENT was:

YES:    TIPTON, PAINTER, LYBRAND, THOMPSON, LANDIS, KIFFER, SHAY

NO:     NONE

MOTION DECLARED CARRIED.

Upon roll call, the vote on the MOTION was:

YES:    KIFFER, THOMPSON, PAINTER, SHAY, TIPTON, LYBRAND, LANDIS

NO:     NONE

MOTION DECLARED CARRIED.

<u>Consideration of Resolution No. 1909 accepting Designated Legislative Grant No. 06-DC-206 for the South Tongass Water/Sewer Crossings</u>

M/S Landis/Painter to adopt Resolution No. 1909.

Upon roll call, the vote on the MOTION was:

YES:    SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:     NONE

MOTION DECLARED CARRIED.

<u>Consideration of Resolution No. 1910 accepting Designated Legislative Grant No. 06-DC-204 for the Mountain Point Water Upgrades/Booster Plant Project</u>

M/S Kiffer/Shay to adopt Resolution No. 1910.

Upon roll call, the vote on the MOTION was:

YES:    PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:     NONE

MOTION DECLARED CARRIED.

<u>Consideration of award to Surrey Fire Trailer for purchase of a fire safety training trailer for the North Tongass Fire Department</u>

M/S Kiffer/Painter to authorize the Borough Manager to award the purchase of the fire safety training trailer to Surrey Fire Trailer in the amount of $36,380.

In response to Assemblymember Kiffer, Assistant Manager Corporon said the shipping charges and a generator for power to the trailer were included in the grant funds.

Fire Chief Hull explained the trailer would be used for training children in fire safety practices. He noted it would be available for all area fire departments.

Upon roll call, the vote on the MOTION was:

YES:    LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON, TIPTON

NO:     NONE

MOTION DECLARED CARRIED.

<u>Consideration of Resolution No. 1912 designating replacement of the airport wastewater treatment facility as the Borough's number one FY05/06 wastewater project and authorizing the Manager to submit a Municipal Matching Grant Program application for replacement of the airport's wastewater plant</u>

M/S Painter/Kiffer to adopt Resolution No. 1912.

Mayor Salazar asked if a sewer line was going to be run to Revilla Island. Manager Eckert said staff was pursuing grants to fund the sewer line and the water line to the airport. In response to Mayor Salazar, Manager Eckert said the timeframe for the lines to Revilla was not known and the Borough had to have a plan for the plant replacement if the lines were not placed soon because of notices of violation received from the state.

Assemblymember Lybrand explained the technical aspects of the proposed water and sewer lines.

Assemblymember Painter asked how the city could provide sewer and water outside the city limits.

Assemblymember Tipton asked where the $250,000 would come from and Manager Eckert said he understood it was one-half the airport's $500,000. Assemblymember Tipton noted that at a past meeting the Assembly approved several projects for the airport and one of them would probably take the other $250,000. He said staff needed to provide the Assembly with a budget amendment to cover the other contract. Manager Eckert agreed. Assemblymember Tipton said the extra funds would probably come from the Land Trust Fund or the Economic Development Fund and Manager Eckert agreed.

Upon roll call, the vote on the MOTION was:

YES:    LYBRAND, KIFFER, SHAY, TIPTON, LANDIS, PAINTER, THOMPSON

NO:     NONE

MOTION DECLARED CARRIED.

<u>Request for executive session to discuss the offer to purchase west Wards Cove properties</u>

<u>Consideration of Resolution No. 1903 authorizing the Borough Manager to dispose by sale certain portions of real property in west Wards Cove to a LLC to be formed by Ted Falconer [postponed on August 1, 2005]</u>

There is a motion on the floor: M/S Tipton/Kiffer to adopt Resolution No. 1903.

<u>Consideration of proposal letter from the Alaska Marine Highway System dated August 9, 2005—Assemblymembers Landis and Tipton</u>

M/S Tipton/Painter that the Borough Assembly declare that it is in the best interest of the Borough to discuss negotiations to purchase Borough property in west Wards Cove and to provide direction to the Borough Manager and Borough Attorney in executive session along with Falconer et. al. and Alaska Marine Highways on their particular portions.

In accordance with that finding, I further move that the Borough Assembly go into executive session in accordance with KGB Code Section 5.31.080(b)(2)(d) to discuss those terms.

Assemblymember Kiffer asked if the offers would be discussed with Falconer in the executive session. Assemblymember Tipton pointed out there were two different components so initially the executive session needed to include Falconer et. al. as well as Alaska Marine Highways. He said once the issue was discussed, then just Falconer et. al. would be included.

Assemblymember Thompson asked why items would be discussed in executive session that could be discussed in public. Assemblymember Tipton responded the parties had requested that the terms and conditions be discussed in executive session. He said it was no different than discussing unions or employees that had requested an executive session.

Mayor Salazar asked if both items were going to be discussed and Assemblymember Tipton said both were included.

Upon roll call, the vote on the MOTION TO HOLD AN EXECUTIVE SESSION was:

YES:        SHAY, TIPTON, PAINTER

NO:         THOMPSON, LANDIS, LYBRAND, KIFFER

MOTION DECLARED FAILED.

RECESS:

The meeting recessed at 8:15 and reconvened at 8:28 p.m.

Mayor Salazar suggested the principals involved with the offers address the Assembly and then the decision to go into executive session could be reconsidered.

Cory Jenkins, Renaissance Development Group, said he was available for questions. In response to Assemblymember Shay, Mr. Jenkins said his company had a fair amount of success in economic development for Tier 2 municipalities such as Boise, Idaho. He added he believed there were some topics that may arise that might be deemed proprietary and he would feel more comfortable if the Assembly would reconsider going into executive session. He said if after a brief time the Assembly did not believe that any of the information was proprietary he would be happy to come out of executive session and discuss it.

Assemblymember Tipton asked Mr. Jenkins if he felt it was important to include a representative from AMHS in the executive session for a portion of the time. He said AMHS was interested in a portion of the property. Mr. Jenkins said the involvement of AMHS was paramount in the development of the west side of the cove.

Assemblymember Painter requested that an Assemblymember who voted on the prevailing side of the motion make a motion to reconsider it.

Assemblymember Landis emphasized it was important for the different parties to explain what they wanted to do so the public could be made aware of the potential plans.

Cory Jenkins said his firm had an offer in for the entire westside of Wards Cove for $9 million. He said there were pieces excluded that were in the core of the development that involve AMHS. Mr. Jenkins said they would like to discuss the best way for the economic development of the westside of the cove while at the same time allowing AMHS to achieve their goals and the Borough to achieve its goal of increased jobs and increased tax revenues. He said overall that was the goal of his company.

Assemblymember Landis said there was discussion at a prior meeting about the assessed values of the property versus the offer and noted the Assembly had a fiduciary responsibility to the citizens of the Borough. He noted the assessed value was approximately $21 million and the offer was for $9 million. He asked how Mr. Jenkins' firm arrived at the amount of $9 million.

Mr. Jenkins said there were assets and liabilities involved in developing the land. He noted he was a licensed realtor and stated the possibility for remediation issues involved a large portion of the site. He said given the knowledge that was a greater probability than just some faint possibility affected the decision to take the risk. He said the risk involved would call for a re-evaluation of the assessment.

Assemblymember Kiffer noted that creation of jobs had been an overriding goal of the Borough and asked if jobs would also be the goal of Renaissance Development Group. Mr. Jenkins advised that he planned to spend at least 70 percent of his time, for the next four or five years, on the project. He wondered if he was going to have a headache every time he wanted to cooperate with the Borough and act in the best faith of both parties. He said considering the amount of time he was going to focus on the project, jobs would come. He said he could not get commitments from companies yet, so he could not say how many jobs, but it was part of economic development.

Assemblymember Shay invited Ted Falconer to the podium to discuss the veneer plant. Mr. Falconer said he had been in the business for about 56 years and went on to discuss his experience in the wood products business and how he developed interest in the veneer mill in Wards Cove. Mr. Falconer said his company had developed 17 mills and none of them were unsuccessful. He said he would make money from the mill but he would also create about 40 jobs. He mentioned the possibility of making plywood at the mill at some future time. Mr. Falconer provided information about his current veneer products sales and distribution. Mr. Falconer emphasized he did not lie to anyone or tell big tales and that he very much wanted to operate the veneer mill. He explained that he HAD interested Jerry Jenkins and his son in the site.

Assemblymember Kiffer asked why the group was interested in all the property on the westside of Wards Cove and Mr. Falconer explained the areas he would need for the veneer plant. He said all the logs needed to be stored on dry land, along with the finished veneer products.

Jerry Jenkins said his firm had a number of contracts and said, in response to an earlier question by Assemblymember Landis, that the slate of properties his firm looked at totaled about $19 million. He noted there was a lot of cleanup to be done and there were a lot of hazards in the area. He said the whole cove was vital to the veneer operations and others.

In response to Assemblymember Painter, Mr. Jenkins explained the development and veneer mill would be a joint operation with Mr. Falconer. He emphasized the AMHS operation was critical to their plans for the site.

Assemblymember Landis stated he had done some research on Mr. Jenkins' firm and it appeared the pattern was for it to stick with a project through to the end and it appeared the communities were happy with the results.

Assemblymember Thompson asked if the purchase price was negotiable and Gary Jenkins said they were open for discussion. He said they probably would not be willing to take less land.

Assemblymember Landis asked Mr. Falconer why he had not been able to open the veneer plant despite there being an agreement to do it. Mr. Falconer said he only knew of one agreement. He commented no agreements were taken on by either party. He said the offer on the table now was much the same as the rest of the offers. He reiterated his desire to operate the veneer mill and that there was an offer on the table. Assemblymember Landis asked Mr. Falconer if it was his intention to run the veneer mill as a veneer mill and Mr. Falconer responded yes. In further response to Assemblymember Landis, Mr. Falconer briefly reviewed his supply options. Mr. Cory Jenkins interjected the information being sought was starting to impinge on proprietary information. He emphasized the veneer mill was just a part of the entire development scenario.

Assemblymember Painter noted the Borough's holding costs for the Wards Cove was about $750,000 per year for the last three years. Manager Eckert noted the AMHS remodel was about $1 million and the Borough had a loss of approximately $1 million per year in property taxes. Assemblymember Painter asked if the Borough had received other offers for the property and Manager Eckert said there was one offer to lease the veneer mill and he had just received an offer on portions of parcels 36, 37 and 38 and everything out towards the point from another developer. He said there were no guarantees they would work with AMHS. Assemblymember Painter asked if the offers were worthy of coming to the Assembly. Manager Eckert responded the offeror had stated they had to study the environmental documents and it depended on financing.

Assemblymember Tipton asked Cory Jenkins if he wanted the Assembly to give direction to staff regarding negotiations with his firm and that he would agree to work with AMHS on their request, and that he would like to see that occur while he was in town. Mr. Jenkins said that was correct.

Assemblymember Lybrand said he had thought there was serious dialogue happening at one time about putting the veneer mill back on line. Manager Eckert said there had been an agreement with Mr. Falconer but it came down to financing problems.

Assemblymember Thompson asked Manager Eckert how he could reconcile the $9 million offer with the Assessment Department's valuation of $21.3 million. Manager Eckert noted Wards Cove had been assessed as one lump sum because the Borough owned it and then when parcels were being laid out the department had to try to place values on them. He said it was very difficult to find any comparable sales. Assemblymember Thompson said he would like to ask the department to explain its valuation and if they took into account remediation and redevelopment costs. Manager Eckert said the current map showed a valuation of $19,589,806.

Mr. Jerry Jenkins said he could not speak for the Assessment Department, but in the $19 million there was $5 million for the veneer mill. He said right now it was losing $750,000 per year and it was closed. He said the veneer mill was not worth $5 million to him and Mr. Falconer could not get it financed.

Assemblymember Tipton asked Manager Eckert if he would like general direction from the Assembly in executive session as to his parameters in negotiating terms with the parties that had come forward, including Alaska Marine Highways. Manager Eckert responded yes. He added it would still have to come back for approval and noted the need to move forward.

Assemblymember Lybrand pointed out on the B-21 parcel it was valued at $1.7 million for the purpose of the Borough's loan and the Borough had received a $300,000 offer. Manager Eckert said the point was well taken.

Assemblymember Painter asked about the liability to the Borough at the Wards Cove properties. Manager Eckert agreed there were some liabilities and reporting issues for the dam. He said the biggest liability was the loss of income.

M/S Kiffer/Landis move for reconsideration of the vote on the executive session.

Upon roll call, the vote on the MOTION TO RECONSIDER was:

YES:        KIFFER, PAINTER, SHAY, TIPTON, LANDIS

NO:         THOMPSON, LYBRAND

MOTION DECLARED CARRIED.

The following motion is back on the floor:

> M/S Tipton/Painter that the Borough Assembly declare that it is in the best interest of the Borough to discuss negotiations to purchase Borough property in west Wards Cove and to provide direction to the Borough Manager and Borough Attorney in executive session along with Falconer et. al. and Alaska Marine Highways on their particular portions.
>
> In accordance with that finding, I further move that the Borough Assembly go into executive session in accordance with KGB Code Section 5.31.080(b)(2)(d) to discuss those terms.

Upon roll call, the vote on the MOTION was:

YES:        TIPTON, PAINTER, LANDIS, KIFFER, SHAY

NO:         LYBRAND, THOMPSON

MOTION DECLARED CARRIED.

Mayor Salazar announced the reason for the executive session was to discuss propriety information. Attorney Brandt-Erichsen added it was information that was proprietary to the parties and would be discussed in executive session to maintain the confidentially of that information.

M/S Tipton/Kiffer to go into executive session, the purpose of which is to discuss proprietary information with the parties involved in the potential purchase of property in Wards Cove.

Upon roll call, the vote on the MOTION was:

YES:        SHAY, LANDIS, PAINTER, TIPTON, KIFFER

NO:         LYBRAND, THOMPSON

MOTION DECLARED CARRIED.

The Assembly went into executive session along with Ted Falconer, Jerry Jenkins, Cory Jenkins, and Captain Falvey of the Alaska Marine Highway System, at 9:37 p.m. and reconvened in open meeting at 9:59 p.m.

M/S Painter/Tipton to extend the meeting to 10:30 p.m.

MOTION DECLARED CARRIED VIA VOICE VOTE.

The Assembly went back into executive session along with Ted Falconer, Jerry Jenkins, Cory Jenkins, and Captain Falvey of the Alaska Marine Highway System, at 9:59 p.m. and reconvened in open meeting at 10:13 p.m.

M/S Tipton/Kiffer that the Assembly declare that it is in the best interest of the Borough to discuss negotiations to purchase Borough property in west Wards Cove and to provide direction to the Borough Manager and Borough Attorney in executive session

In accordance with that finding, I further move that the Borough Assembly go into executive session in accordance with KGB Code Section 5.31.080(b)(2)(d) to discuss those terms.

Upon roll call, the vote on the MOTION was:

YES:       PAINTER, TIPTON, SHAY, KIFFER, LANDIS

NO:        LYBRAND, THOMPSON

MOTION DECLARED CARRIED.

The Assembly went into executive session at 10:14 p.m. and reconvened in open meeting at 10:28 p.m.

M/S Painter/Kiffer to extend the meeting to 10:45 p.m.

MOTION DECLARED CARRIED VIA VOICE VOTE.

The Assembly went back into executive session at 10:28 p.m. and reconvened in open meeting at 10:37 p.m.

Assemblymember Lybrand left the meeting at 10:30 p.m.

Assemblymember Tipton stated in executive session the Assembly provided direction to the Manager, Assistant Manager, and Attorney regarding negotiations with Alaska Marine Highway System, Ted Falconer, et. al. investment group towards potential purchase of the Wards Cove properties. He said any agreement would be brought back to the Assembly for approval.

[Clerk's Note: No action was taken on Resolution No. 1903.]

**Reports of Committees, Executive, Administrators**

Manager's Report

Manager Eckert provided a written report in the packet. He said he had nothing further to add.

Staff Reports [Airport—first meeting of month; Public Works—second meeting of month]

Director Voetberg had submitted a written report.

Mayor's Report

No report given.

Committee Reports

No reports given.

**Assemblymembers' Comments**

Assemblymember Tipton said he hoped the Schoenbar issues would be resolved. He noted that kids were resilient and he believed the community would step forward and move the school in a heartbeat. He said it could happen in a weekend with the proper coordination. Assemblymember Tipton noted a speaker earlier in the meeting had stated it was not possible to move the kids during the school year and he wondered why this could not happen. He said that was going to happen with the Fawn Mountain School. He noted his appreciation for everyone's comments on Lewis Reef Road and said he hoped it would be a good decision over the long term. He did not believe there should be a rush into it and someone's financial situation, or risk, was not the Borough's problem.

Assemblymember Kiffer agreed with Assemblymember Tipton's comments on Schoenbar and thanked Assemblymember Thompson for his lengthy memorandum on a variety of issues.

Assemblymember Thompson thanked the people working on the White Cliff project and the North Tongass Fire Department for the purchase of the training trailer which he said would be a real asset to the community.

Assemblymember Painter said he hoped Board President Schafer received an answer to her question about a move-in date for Schoenbar. He agreed with Assemblymember Tipton's comments about community help for the move-in. He expressed his hope the Wards Cove items progressed in the right direction.

Mayor Salazar interjected he met with Governor Murkowski and Senator Stevens on behalf of the community when they were in town recently.

**Executive Session**—*Procedure: Motion is made and voted upon. If adopted, executive session is held. If necessary, action is taken in public session following the executive session. If there is more than one executive session topic, each topic will be handled completely separate from the other.*

Request for executive session to discuss the offer to purchase west Wards Cove properties

The executive sessions were held earlier in the meeting at the end of New Business.

**Adjournment**—*The meeting must adjourn by 10:00 p.m. unless that deadline is extended to 10:30 p.m. by a motion approved by a majority of the assembly members present. Any extension beyond 10:30 p.m. requires a unanimous vote of all assembly members present. If the meeting is not adjourned or extended prior to 10:00 p.m., or such extended time as has been set, the meeting shall automatically recess at that time and shall be reconvened at 5:30 p.m. the following day.*

The meeting adjourned at 10:42 p.m.

ATTEST:

_____
Borough Clerk

_____
Borough Mayor

**APPROVED: September 6, 2005**