I hereby certify the annexed instrument is a true and correct copy of the original on file in my office.
ATTEST: *[signature]*

# KETCHIKAN GATEWAY BOROUGH

**Regular Assembly Meeting**                                  **September 6, 2005**

**Call to Order—Pledge of Allegiance—Roll Call**

The regular meeting of the Ketchikan Gateway Borough Assembly was called to order at 5:39 p.m., Tuesday, September 6, 2005, by Mayor Salazar in the City Council Chambers.

PRESENT:    LYBRAND, TIPTON, LANDIS, KIFFER, THOMPSON, SHAY [via teleconference], PAINTER [arrived at 5:45 p.m.]

ABSENT:      NONE

The staff present included Manager Eckert, Assistant Manager Corporon, Attorney Brandt-Erichsen, Public Works Director Voetberg, Property Manager Machado, Airport Manager Carney, Assessment Director Finegan, Principal Planner/Code Administrator Taylor, North Tongass Fire Chief Hull and Clerk Edwards.

**Ceremonial Matters**—*Presentations, Proclamations, Awards, Guest Introductions*     *5:40:39 PM*

Proclamation—*Ketchikan, Alaska Youth Court Month*—September 2005

Mayor Salazar read the proclamation and presented it to Bob Combs, Director of the Ketchikan Youth Court organization. Mr. Combs introduced members of the audience who were active with the Youth Court and thanked the Assembly for honoring the Youth Court.

Proclamation—*Fetal Alcohol Syndrome Awareness Day*—September 9, 2005

Mayor Salazar read the proclamation and presented it to a representative from the KAR House Residential Treatment Facility. She spoke of the importance of women to abstain from alcohol during their pregnancy and the impact on society of people with FAS.

Proclamation—*National Alcohol and Drug Addition Recovery Month*—September 2005

Mayor Salazar read the proclamation and gave it to the Clerk for distribution.

**Citizen Comments**—*Comments on any topic other than scheduled public hearings.*     *5:50:09 PM*

Erich Muench, member of the Leask Users Coalition, said he had heard rumors some of the Assembly were contemplating reversing their decision on the conservation easement at Leask Lakes. Mr. Muench said he understood some of the comments to the Corps of Engineers adversely affected the Alcan operation and noted the opposition to the log dump was not by the Leask Users Coalition. He said he understood some members had written letters and that they did not understand the White River facility was not available for a log dump. Mr. Muench went on to discuss the polarization in the community between those that oppose development and those that encourage development. He encouraged the Assembly to consider their action on the conservation easement to be a service to the community rather than a service to any group. Mr. Muench added that was the reason he became involved in the coalition and went on to describe the future use of the area. He responded to questions from the Assembly.

Susan Doherty, president of the Swim and Dive Booster Club, invited the Assembly to attend the upcoming swim meet being hosted by the Swim and Dive Club. She thanked the Assembly for considering the issue of reimbursing the school district for costs involved in conducting classes at the Plaza. Ms. Doherty expressed her

EXHIBIT 10

frustration that Schoenbar School was not open for the students and said she could not understand the issues preventing the use of the building and felt the building could be occupied while the final work was completed. Ms. Doherty urged the Borough staff to fast-track the process to open the school.

Sheldon Flom, a citizen of the Borough, stated he felt the Borough had let down the citizens and students of the Borough by not having the school open for the students. He urged the Assembly to authorize the reimbursement to the school district of the rent and moving expenses associated with the temporary quarters. Mr. Flom said the bills should be passed on to McGraw Construction and it was up to the Assembly and management to make sure it was done. He also urged staff to not accept the building until everything was right. He stated the Assembly should re-examine the procedures for contracts and re-modeling projects to be sure the same situation did not happen again.

Mike Painter, a vendor of the Borough, expressed frustration that it took 12 days to receive a purchase order number from the Borough in order that he could bill it for the services he provided. He said he talked to staff and was not able to accomplish anything.

**Public Hearings**—*Procedure: Citizens will sign up on a sheet and testify in the order that they sign up. Citizens may present arguments in favor or in opposition; staff report update, if any; close the public portion of the hearing and the assembly deliberates and renders a decision on the matter at hand.*

*6:06:41 PM*

Proposed Special Assessment District –Paving, sidewalks and guardrail on Old Homestead Road between South Tongass Highway and Fawn Mountain School

Ron Arntzen, a property owner included in the proposed LID, described his property and noted that the road to Fawn Mountain School should be paved, but said he would not receive any benefit from it because he was years away from developing his property and selling residential lots. Mr. Arntzen said he did not believe it was fair that he would be required to pay $70,000 for paving the road when he would not receive any benefit from it. He stated the Borough had indicated when he sold it the land for the school that it would pay for the paving of the road. He requested the Assembly not pass Ordinance No. 1368.

Consideration of Ordinance No. 1368 creating the Old Homestead Road Assessment District No. 1 for the purpose of paving roads

M/S Tipton/Lybrand to introduce Ordinance No. 1368, cause it to be published and set it for a public hearing on September 19, 2005, in the City Council Chambers.

Assemblymember Tipton referred to the agenda statement and asked what was not accurate in the material submitted by Mr. Arnzten. He said four items were mentioned in the agreement: lights, curbs, sidewalks and paving. He also asked if the LID could be done so that future maintenance on the road would adhere to the percentages in the ordinance. He also asked if it could be zero cost to Mr. Arnzten at the beginning. Attorney Brandt-Erichsen pointed out the contract stated if the sidewalks, pavement, etc., were done it was up to the Borough. He said in acquiring the school site, Homestead Development did not have a contractual obligation to the Borough to make those improvements. Attorney Brandt-Erichsen noted there was nothing in the agreement that addressed how the Borough would do those items, when it would do them, and if it would do them.

Attorney Brandt-Erichsen advised that if the Borough desired to make improvements, one of the financing mechanisms available was formation of an LID. He said it was by virtue of the fact Arnzten owned property that would benefit from the improvements that he was included in the LID.

Attorney Brandt-Erichsen said the construction of the improvements and the maintenance of the improvements were two separate operations. He said the assessment district was to pay for the improvements, but it was not the

vehicle to pay for the maintenance of the improvements. He said the maintenance would have to be borne either through creation of a service area or it could be paid for out of other funds. He noted in previous discussions it was stated the only areawide power the Borough had that would allow justification for spending funds for keeping the road maintained for school children would be through the exercise of the Borough's education powers.

Assemblymember Tipton asked if an LID was the only option to pay for the road and Attorney Brandt-Erichsen explained the road could be paid for through the education funding for the school. He said if it could be proved that no other properties would benefit from the improvements then the cost could be borne by the church and the school.

Assemblymember Tipton asked why it was not mentioned to Mr. Arntzen three years ago rather than being brought up now.

Assemblymember Thompson noted the road was being paved because of the school and pointed out there were many subdivisions with unpaved roads. Attorney Brandt-Erichsen noted the agreement did not say the Borough would pave the road. Assemblymember Thompson disagreed and Attorney Brandt-Erichsen explained Mr. Arnzten did not have a legally enforceable right to make the Borough pave the road or put in sidewalks. Assemblymember Thompson commented the Borough did not have the right to make Mr. Arnzten pay for the road when the Borough said it would be responsible for paving the roads.

Assemblymember Landis referred to Exhibit B of the sale agreement and said it appeared the Borough's obligations were somewhat in doubt. He said he was not in favor of paving the road now; that the money could be better spent elsewhere.

Mayor Salazar asked if any of the money was eligible for the 70/30 split. Attorney Brandt-Erichsen said he understood it was not eligible. He said the guardrail was the major concern because of the drop at the edge of the roadway.

Assemblymember Painter said he was not in favor of the ordinance and noted the previous resolutions about the LID made no mention of the details of the road improvements contained in the sales contract. He said he was disappointed with staff and had he known the details would have debated it. He said he did not want to see the Borough reneging on an agreement.

Attorney Brandt-Erichsen said it was pointed out to him that reference to the road pavement was not a part of the contract. It was part of the subdivision request. Assistant Manager Corporon explained the intent was to make it clear that paving of the road was not part of the sale.

Assemblymember Tipton said that based upon the information provided in the agenda packet he felt the Borough was responsible for the improvements. Assistant Manager Corporon explained the information was from a Planning Commission document. He said the sales contract contained only an Exhibit A and Exhibit B.

Assemblymember Landis observed the entire road issue should be presented to the Department of Education to obtain funding for the improvements. Manager Eckert said the contractor was more concerned with getting the sidewalks, guardrail and storm drains installed; the paving could happen at any time. He said while the contractor had equipment in town the work could be added under a change order. He said the contract was well under the contract amount currently.

Assemblymember Thompson suggested the cost of paving be separated out from the cost for sidewalks, curbs and gutters. He said the pavement would be of value eventually to Mr. Arnzten and his suggestion would reduce the amount Mr. Arnzten had to pay.

Discussion continued on the need for pavement on the road.

Assemblymember Tipton asked if Manager Eckert had a problem with allocating only the cost of pavement to the three parties and having the Borough assume the rest of the cost of improvements. Manager Eckert said it worked for him, but the maintenance was of concern especially after development of the subdivision began.

Attorney Brandt-Erichsen pointed out that the KGB Code stated that if the Assembly revised the plan in a manner which was a substantial change from what was noticed for the public hearing that a new public hearing would have to be re-advertised and held. He suggested the Assembly direct the staff to sever the improvements, other than the paving, and send out a new notice of hearing on an assessment district for just the paving.

Assemblymember Landis requested a breakdown of the figures. He also asked that the figures be as up-to-date as possible.

Mayor Salazar requested Manager Eckert make sure the information was provided.

Assemblymember Tipton recommended the ordinance be introduced and more current information about the costs could be provided at the public hearing. He said Mr. Arnzten would also have an opportunity to consider the other options presented.

In response to Assemblymember Landis, Manager Eckert explained the schedule of work by the contractor.

Upon roll call, the vote on the MOTION was:

YES:        SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:         NONE

MOTION DECLARED CARRIED.

*6:56:58 PM*

Ordinance No. 1365 adopting the North Gravina Area Plan, Central Gravina and Airport Reserve Area Plan, and the Clam Cove and Blank Inlet Area Plan

Consultant Stephen Reeve and Planner Taylor made a PowerPoint presentation to the Assembly regarding the three plans for the east coast of Gravina Island and responded to questions.

RECESS:

The meeting recessed at 7:33 p.m. and reconvened at 7:46 p.m.

M/S Painter/Kiffer to adopt Ordinance No. 1365.

Upon roll call, the vote on the MOTION was:

YES:        PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:         NONE

MOTION DECLARED CARRIED

**Scheduled Informational Reports and/or Presentations**—*Reports on construction progress, financial status, presentations of budgets, audits, and reports or planning documents and related items.*

Regular Assembly Meeting
September 6, 2005 – Page 4

Board of Education Report       7:47:28 PM

Board President Schafer distributed and read a resolution of the board urging the Borough "to facilitate a timely occupancy of Schoenbar Middle School." She described the accommodations for the 7th and 8th graders at the temporary school at the Plaza Mall. President Schafer voiced her support for the Borough to reimburse the district for the cost of rent for the space and moving expenses.

Assemblymember Landis took exception to the charge the Borough was entirely in control of the construction schedule. He said unfortunately that was not the case and apologized for the inconvenience to the community.

Assemblymember Kiffer commended the Schoenbar students and staff for enduring the situation.

Assemblymember Painter expressed dismay that the school was sited in the Plaza Mall where the students would be exposed to liquor stores and pull tab operations.

Manager Eckert stated there were still no final reports on the Schoenbar inspections and said the architect had not issued his substantial completion report because of outstanding issues. He responded to questions from the Assembly about the reports.

**Acceptance of Claims**       8:03:22 PM

M/S Tipton/Kiffer to accept the Ketchikan Gateway Borough claims for the period of August 9 through August 26, 2005, and wire transfers for the period of July 25 through August 22, 2005, in the amount of $5,795,229.13.

Mayor Salazar ruled that Assemblymembers Thompson and Painter did not have a conflict of interest with the two checks payable to their companies.

Staff responded to questions from Assemblymembers regarding payments.

Upon roll call, the vote on the MOTION was:

YES:        LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON, TIPTON

NO:         NONE

MOTION DECLARED CARRIED.

**Consent Calendar**—*Matters listed under the consent calendar are considered to be routine and will be enacted by one motion and one vote. There will be no separate discussion on these items. Platting or zoning items that are subject to court appeal may not be listed on the consent calendar. If the Mayor or an Assembly Member requests discussion, that item will be removed from the consent calendar and will be considered under <u>Unfinished Business.</u>*

8:05:23 PM

<u>Motion to approve the regular meeting minutes of August 15, 2005, 2005; as presented</u>

<u>Motion that the Assembly finds that omitted mailing constitutes good cause for the claimant's failure to make timely application for the 2005 Senior Citizen Property Tax Exemption and therefore waives the failure and authorizes the Director of Assessment to accept the application as if timely filed—Parcel 01-1431-000-500-0616</u>

<u>Motion that the Assembly finds that omitted mailing constitutes good cause for the claimant's failure to make timely application for the 2005 Senior Citizen Property Tax Exemption and therefore waives the failure and</u>

authorizes the Director of Assessment to accept the application as if timely filed—Parcel 31-3540-101000-202A/201B

Motion that the Assembly finds that omitted mailing constitutes good cause for the claimant's failure to make timely application for the 2005 Senior Citizen Property Tax Exemption and therefore waives the failure and authorizes the Director of Assessment to accept the application as if timely filed—Parcel 01-1333-006-700-0701

Motion that the Assembly finds that omitted mailing constitutes good cause for the claimant's failure to make timely application for the 2005 Senior Citizen Property Tax Exemption and therefore waives the failure and authorizes the Director of Assessment to accept the application as if timely filed—Parcel 01-1224-012-100

Motion to adopt Resolution No. 1913, abolishing the Ketchikan Area Human Resources Investment Council, a standing committee of the Ketchikan Gateway Borough Assembly, and repealing Resolution Nos. 1259 and 1419

Motion to adopt Resolution No. 1915, abolishing the School Budget Advisory Committee, a standing committee of the Ketchikan Gateway Borough Assembly, and repealing Resolution No. 1599

Motion to appoint Liz Chambers, John Fahey, and Eric Collins to the Gold Nugget Service Area Board of Directors with terms ending June 30, 2006, June 30, 2007 and June 30, 2008 respectively.

M/S Tipton/Painter to accept the Consent Calendar as presented.

Assemblymember Thompson requested the item dealing with Parcel No. 01-1224-012-100 be considered separately.

Upon roll call, the vote on the MOTION [excluding the item dealing with Parcel No. 01-1224-012-100] was:

YES:    LYBRAND, KIFFER, SHAY, TIPTON, LANDIS, PAINTER, THOMPSON

NO:     NONE

MOTION DECLARED CARRIED.

**Unfinished Business**        8:06:28 PM

Transferred Consent Calendar— Motion that the Assembly finds that omitted mailing constitutes good cause for the claimant's failure to make timely application for the 2005 Senior Citizen Property Tax Exemption and therefore waives the failure and authorizes the Director of Assessment to accept the application as if timely filed—Parcel 01-1224-012-100

M/S Kiffer/Landis that the Assembly finds that omitted mailing constitutes good cause for the claimant's failure to make timely application for the 2005 Senior Citizen Property Tax Exemption and therefore waives the failure and authorizes the Director of Assessment to accept the application as if timely filed.

Assemblymember Thompson said in this instance the person who filed the application was late. He said it took some effort from citizens to obtain the exemption and asked why the Assembly should accept the late filing.

Mayor Salazar asked why the exemptions have to be filed each year and wondered why one filing would not be sufficient until the property ownership changed. Director Finegan explained the process for filing and said a yearly filing enabled the department to keep track of the many changes that occurred each year. He said the Assembly could change the process if it desired. He added he did not know the circumstances as to why the owner did not file the form on time.

Upon roll call, the vote on the MOTION was:

YES:      THOMPSON, SHAY, TIPTON, LANDIS, LYBRAND, KIFFER, PAINTER

NO:       NONE

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1906 authorizing the Borough Manager to dispose by sale certain Borough parcels located in Wards Cove and Mud Bay [re-drafted to conform to Assembly direction given at the August 15, 2005 meeting]     *8:12:57 PM*

M/S Thompson/Kiffer to adopt Resolution No. 1906.

In response to a request from Assemblymember Landis, Manager Eckert provided a brief summary of the resolution and responded to Assembly questions.

Upon roll call, the vote on the MOTION was:

YES:      KIFFER, THOMPSON, PAINTER, SHAY, TIPTON, LYBRAND, LANDIS

NO:       NONE

MOTION DECLARED CARRIED.

**New Business**

Consideration of a three-year extension to an agreement with the City of Saxman for disposal of junked and abandoned vehicles     *8:16:47 PM*

M/S Landis/Kiffer to authorize the Borough Manager to execute the attached three-year extension agreement between the City of Saxman and the Ketchikan Gateway Borough for disposal of junked and abandoned vehicles.

Assistant Manager Corporon responded to questions from the Assembly.

Upon roll call, the vote on the MOTION was:

YES:      TIPTON, PAINTER, LYBRAND, THOMPSON, LANDIS, KIFFER, SHAY

NO:       NONE

MOTION DECLARED CARRIED.

Request for a full review of the April 29, 2003, agreement for fill of Wards Cove property between KGB Manager and Coalaska dba Secon—Assemblymember Lybrand     *8:22:18 PM*

M/S Lybrand/Kiffer for a full review of the April 29, 2003, agreement for fill of Wards Cove property between KGB Manager and Coalaska dba Secon.

Assemblymember Lybrand said the agreement preceded Manager Eckert's employment. He said it included a substantial waste area that had a lot of value. He pointed out the Code was very specific about what the

Assembly had to do and it was not done. He noted the site had never been graded as listed in the agreement. He said the proposal to furnish asphalt was not equal compensation. He said he believed there was a substantial financial gain for someone. Assemblymember Lybrand said he would like to have the issue investigated.

In response to Assemblymember Tipton, Assemblymember Lybrand said the Manager could do the investigation. Assemblymember Lybrand responded to questions from fellow Assemblymembers.

Upon roll call, the vote on the MOTION was:

YES:        SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:         NONE

MOTION DECLARED CARRIED.

Mayor Salazar requested the information be provided by the next meeting.

<u>Consideration of a request for a donation from Ketchikan General Hospital to be used for the rental of "Coco"—
Mayor Salazar</u>        8:26:40 PM

No action was taken on this item.

<u>Motions relating to reimbursement to the KGB School District for costs incurred due to non-occupancy of
Schoenbar Middle School—Assemblymember Tipton</u>        8:27:27 PM

M/S Tipton/Kiffer to reimburse the lease (rent) and utility costs to the KGB School District for the rental of Plaza classroom space, if it occurs.

Mayor Salazar asked if the Borough could be reimbursed through the one-half percent sales tax if it was not able to get reimbursement from a claim. Assemblymember Tipton replied no because it was an operating cost.

Assemblymember Painter said he was not in favor of the motion because he did not like the Mall location for the school and the Assembly had no part of the decision.

Assemblymember Landis asked where the funds would come from and Assemblymember Tipton said they would be taken from the Land Trust Fund for each item.

Assemblymember Kiffer addressed Assemblymember Painter and said the district had run out of options and said he felt the Borough had the responsibility to cover the costs. Assemblymember Painter reiterated his concerns. Assemblymember Tipton stated the district had a tight budget situation and could not cover the extra costs. He added the costs would be included in the potential claims against the appropriate parties, so there was a possibility the Borough would be reimbursed.

Assemblymember Thompson said the costs should be considered part of the contract costs.

A brief discussion was held on whether or not the Assembly should have been involved in the decision to place the students at the Plaza Mall.

Assemblymember Tipton asked for a recommendation from Director Houts about a funding source. Director Houts said the cost should be charged to the construction fund because it would assist in pursuing future claims. Attorney Brandt-Erichsen said it made sense to have the costs charged to the construction fund and at the end of the project a shortfall could be covered from some other fund.

M/S Landis/Thompson to amend the motion by paying for the rent and utility costs from the construction contractual funds.

Upon roll call, the vote on the AMENDMENT was:

YES:        PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:         NONE

MOTION DECLARED CARRIED.

M/S Thompson/Lybrand to amend the motion to limit it to one month's rent and utilities.

Assemblymember Tipton said he hoped one month was all that was needed, and he hoped it would be less. He asked why it had to come back again.

Upon roll call, the vote on the AMENDMENT was:

YES:        LYBRAND, PAINTER, THOMPSON

NO:         LANDIS, KIFFER, SHAY, TIPTON

MOTION DECLARED FAILED.

Upon roll call, the vote on the MOTION was:

YES:        KIFFER, SHAY, TIPTON, LANDIS, THOMPSON

NO:         LYBRAND, PAINTER

MOTION DECLARED CARRIED.

*8:40:05 PM*

M/S Tipton/Kiffer to reimburse the KGB School District for actual costs for the move of equipment and supplies for the 7th and 8th grade students to the Plaza and the move finally into Schoenbar Middle School. In addition, the Borough should coordinate with the district and the community to ask for help with as many vehicles and people as possible to help move the needed items in a much shorter time frame, and the money should come from the construction contractual funds and be included in potential claims against the appropriate parties.

M/S Thompson/Lybrand to delete the second part, the move finally into Schoenbar Middle School because that was a cost that was going to be a cost to the school district no matter what.

Assemblymember Tipton said there was a cost to move in but now the district had to do it much quicker which would lead to overtime and extra costs of equipment and personnel.

Upon roll call, the vote on the AMENDMENT was:

YES:        THOMPSON, SHAY, LYBRAND, PAINTER

NO:         TIPTON, LANDIS, KIFFER

MOTION DECLARED CARRIED.

Upon roll call, the vote on the MOTION was:

YES:    KIFFER, THOMPSON, PAINTER, SHAY, TIPTON, LYBRAND, LANDIS

NO:     NONE

MOTION DECLARED CARRIED.

*8:42:29 PM*

M/S Tipton/Thompson to reimburse the KGB School District for actual extra costs (if any) for the extra bus routes which may be required to accomplish temporary housing for the 7th and 8th grade students until such time as they occupy Schoenbar Middle School. This does not prevent the district from asking the State of Alaska for extra money for the busing routes that may be needed due to our unfortunate facility dilemma. The money should come from the construction contractual funds and be included in potential claims against the appropriate parties.

Assemblymember Painter asked if the bus company had provided information on any costs and Superintendent Martin said they were working on that issue now.

Upon roll call, the vote on the MOTION was:

YES:    TIPTON, PAINTER, LYBRAND, THOMPSON, LANDIS, KIFFER, SHAY

NO:     NONE

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1914 repealing Resolution No. 1821 and authorizing the re-submission of a grant funding application and acceptance of grant funds for the U.S. Department of Agriculture Rural Development Grant Program for the completion of two fire stations            *8:43:39 PM*

M/S Landis/Thompson to adopt Resolution No. 1914.

Fire Chief Hull explained this resolution would upgrade the grant from covering Station 8 to covering both Station 8 and Station 6. In response to Assemblymember Thompson, Chief Hull said if the Assembly did not pass the resolution he assumed the grant would go away.

Upon roll call, the vote on the MOTION was:

YES:    SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:     NONE

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1917 establishing the Mountain Point Wastewater System Development Charge for multifamily residential, commercial, industrial and other property uses            *8:46:27 PM*

M/S Tipton/Shay to adopt Resolution No. 1917.

Assemblymember Painter questioned some of the EDU charges and Director Voetberg stated the EDUs were taken from national standards. He responded to other questions from the Assembly.

Upon roll call, the vote on the MOTION was:

YES:        PAINTER, TIPTON, THOMPSON, SHAY, KIFFER, LANDIS, LYBRAND

NO:         NONE

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1918 declaring the McElroy 412 HDPE fusion machine surplus and authorize disposal through sale or trade-in for HDPE fusion repair equipment with accessories         *8:52:24 PM*

M/S Painter/Kiffer to adopt Resolution No. 1918.

Assemblymember Painter asked why the Borough purchased the machine and Assistant Manager Corporon said he understood when it was purchased it was going to be used by the contractor on the project because there were no other machines on the island. He said he believed the intent was to keep costs as low as possible.

The discussion continued for a while on the machine and the trade-in equipment.

Upon roll call, the vote on the MOTION was:

YES:        LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON, TIPTON

NO:         NONE

MOTION DECLARED CARRIED.

Consideration of Ordinance No. 1369 amending portions of KGB Code Sections 30.10.011 and 30.20.016, regarding Borough employees residency requirements; 30.30.036 regarding work scheduling; and 30.30.038 regarding work locations         *9:01:05 PM*

M/S Thompson/Kiffer to introduce Ordinance No. 1369, cause it to be published and set it for a public hearing on September 19, 2005, in the City Council Chambers.

Upon roll call, the vote on the MOTION was:

YES:        LYBRAND, KIFFER, SHAY, TIPTON, LANDIS, PAINTER, THOMPSON

NO:         NONE

MOTION DECLARED CARRIED.

Consideration of Ordinance No. 1373 amending the FY05/06 Borough Budget by making three loans from the Land Trust Fund to the Airport Enterprise Fund in the amount of $1,086,500 for capital projects as follows: HVAC System - $179,000; Generators - $250,000; Airport Road Construction - $657,500; making a supplemental appropriation from the General Fund in the amount of $1,950; a supplemental appropriation from the Airport Enterprise Fund in the amount of $1,086,500; a supplemental appropriation from the Old Homestead Special Assessment Fund in the amount of $442,856         *9:01:59 PM*

M/S Painter/Lybrand to introduce Ordinance No. 1373, cause it to be published and set it for a public hearing on September 19, 2005, in the City Council Chambers.

Assemblymember Thompson requested a division of the question. There was no objection.

Assemblymember Tipton said he understood AIP funds could only be used for future projects; not projects already done. He asked how the generators could be reimbursed from AIP funds. Assistant Manager Corporon said the FAA and state agreed to allow an exception for the generators. He said a letter was received from FAA about the proposal in which they agreed to allow use of AIP funds.

Upon roll call, the vote on the HVAC SYSTEM - $179,000 was:

YES:        SHAY, TIPTON, LYBRAND, KIFFER, PAINTER

NO:         THOMPSON, LANDIS

MOTION DECLARED CARRIED.

Upon roll call, the vote on the GENERATORS - $250,000 was:

YES:        KIFFER, THOMPSON, PAINTER, SHAY, TIPTON, LYBRAND, LANDIS

NO:         NONE

MOTION DECLARED CARRIED.

Assemblymember Thompson requested an update about Forest Service funds and other issues on the road. Manager Eckert said the Forest Service would pay for upgrades on a public road. He said they were currently working on the roads in the area and were in the process of getting easements from the state for the airport portion of the road. Assemblymember Thompson asked if the Borough had received written confirmation and Manager Eckert said he had received an e-mail. Assemblymember Thompson asked if anyone would be charged a fee to use the road after the Borough took it over. Manager Eckert replied the Borough would charge fees.

Assemblymember Kiffer asked about the total cost to bring the road up to standards and if the Forest Service was going to cover all the costs. Manager Eckert said he did not know the costs and he understood the Forest Service had a certain amount of funds, and next year would receive more, in order to upgrade the road.

M/S Thompson/Lybrand to amend to fund the road with a loan from the Land Trust Fund that would be repaid from the Economic Development Fund when the auction funds are available.

In response to Assemblymember Tipton, Manager Eckert said he and Mr. Seley discussed a number of options for payment of the road work. He pointed out that part of the money could be used as a partial credit for Borough land.

Upon roll call, the vote on the AMENDMENT TO THE ROAD CONSTRUCTION FUNDS - $657,500 was:

YES:        SHAY, LANDIS, PAINTER, LYBRAND, THOMPSON, TIPTON, KIFFER

NO:         NONE

MOTION DECLARED CARRIED.

Assemblymember Tipton attempted to make a motion to pay one-half of the $657,500 in cash with the rest to be used to reduce the loan to Pacific Log and Lumber. There was no second.

Upon roll call, the vote on the ROAD CONSTRUCTION FUNDS - $657,500 was:

YES:    PAINTER, LYBRAND, THOMPSON, LANDIS, KIFFER, SHAY

NO:     TIPTON

MOTION DECLARED CARRIED.

Assemblymember Tipton asked if everyone was in agreement to the option on the property listed on page 7. There was response.

Upon roll call, the vote on the SUPPLEMENTAL APPROPRIATION - $1,950 was:

YES:    PAINTER, TIPTON, SHAY, KIFFER, LANDIS, LYBRAND

NO:     THOMPSON

MOTION DECLARED CARRIED.

Upon roll call, the vote on the OLD HOMESTEAD SPECIAL ASSESSMENT FUND - $442,856 was:

YES:    LANDIS, LYBRAND, KIFFER, PAINTER, SHAY, THOMPSON

NO:     TIPTON

MOTION DECLARED CARRIED.

Discussion—Hiring of outside attorney for Schoenbar—Assemblymember Lybrand            9:17:40 PM

The item was combined with the following agenda item.

Consideration of a motion to authorize and direct the Borough Manager and Borough Attorney to determine a scope of work and estimated costs for further legal services pending additional review and evaluation of alternatives for claims disputes concerning Schoenbar Middle School            9:19:38 PM

M/S Lybrand/Painter to direct the Manager and Attorney to determine a scope of work and estimated costs for further legal services pending additional review and evaluation of alternatives for claims and disputes concerning Schoenbar Middle School.

Mayor Salazar said he thought Assemblymember Lybrand submitted his agenda request because the Borough Manager hired an outside attorney. Assemblymember Lybrand agreed and pointed out the Borough Attorney was the municipal attorney for the Borough in all civil and criminal proceedings. He said he wanted it clear that the Borough Attorney was Attorney Brandt-Erichsen.

Assemblymember Landis questioned where Assemblymember Lybrand had seen the Manager refer to the Borough Attorney as being someone other than Attorney Brandt-Erichsen. Assemblymember Lybrand said it was in some correspondence he had, but he did not bring it with him.

Assemblymember Tipton pointed out there was a motion on the floor and noted the Assembly was creating a problem when it directed the Manager to be the contract administrator in conjunction with the Attorney and if

the Attorney was not available for some reason, the Manager should be able to act in the best interest of the Borough. In response to a comment by Assemblymember Tipton, Assemblymember Lybrand said he was not a subcontractor on the project and had not been for years.

Upon roll call, the vote on the MOTION was:

YES:    LYBRAND, KIFFER, SHAY, TIPTON, LANDIS, PAINTER, THOMPSON

NO;     NONE

MOTION DECLARED CARRIED.

Consideration of Resolution No. 1919 authorizing KGB participation in House Bill 161, a bill enacted to allow re-employment of individuals who are currently receiving a retirement benefit from the Public Employees' Retirement System (PERS) or the Teachers' Retirement System (TRS)      *9:24:34 PM*

M/S Thompson/Painter to adopt Resolution No. 1919.

Upon roll call, the vote on the MOTION was:

YES:    THOMPSON, SHAY, TIPTON, LANDIS, LYBRAND, KIFFER, PAINTER

NO:     NONE

MOTION DECLARED CARRIED.

**Reports of Committees, Executive, Administrators**

Manager's Report            *9:25:19 PM*

Assemblymember Thompson said in a letter he saw from McGraw's attorney there seemed to be a lot of life/health problems listed. He asked how much had been completed and Manager Eckert said there was no work done on the Schoenbar building during the weekend. He went on to provide detailed reports on the work of various trades on the building.

Assemblymember Thompson asked if it would be a good time for the Borough to fire the contractor and take the job over. Manager Eckert said that option was available and a letter was being drafted to the contractor asking when he was going to finish.

Assemblymember Shay cautioned the Assembly about terminating the contractor.

The Assembly discussed possible options for future actions on Schoenbar and heard a list of items from Manager Eckert about life/safety issues.

Assemblymember Thompson suggested an executive session be scheduled for September 19, 2005, where the Assembly could receive a status report on the Schoenbar project. He expressed his frustration with the project and the contractor.

A brief discussion was held on problems with an I-beam and Manager Eckert explained what the contract attorney was doing.

Manager Eckert reported Fawn Mountain construction was proceeding well. Fuel costs were rising and would have an adverse affect on the budget. He reported he had received good comments from airport workers about the airport manager.

Assemblymember Painter reminded the Assembly about an e-mail sent by Kyle Johansen regarding fisheries projects. He said the Assembly needed to think of some fisheries projects for the community.

Assemblymember Thompson questioned a few of the legislative requests provided with the Manager's report:

- Tennis court bubble. He thought it was in the capital budget. Assistant Manager Corporon said it was taken out.
- Secured parking facilities. He asked if this would be the one on Revilla Island. Manager Eckert responded yes and Assemblymember Thompson said it was probably not a high priority. Manager Eckert responded the Borough was receiving more requests for secured parking.
- Rerouting utilities at the powerhouse at Wards Cove. He asked if it was necessary if the property was being sold. Manager Eckert said it may or may not make the list and until he had a firm purchase contract he wanted to keep it in.
- South Tongass Water and Sewer Line Crossings. He thought those were funded. Manager Eckert replied there was continuing discussion with the state.

Assemblymember Lybrand left the meeting at 9:45 p.m.

Assemblymember Tipton provided his comments and questions on the legislative requests:

- Aquarium. He asked about the $42 million costs and wondered where that figure came from.
- GIS upgrades made sense.
- Re-route the utilities—he agreed with Assemblymember Thompson that it should be removed.
- Multi-purpose maintenance facility. Where did the cost estimate come from; size of the building; location of building. He said the answers could be provided when the list was brought back for Assembly approval.
- He said he agreed with the Whitman-Roosevelt distribution water system
- What would be the effect of acquiring the land underneath Connell Lake in light of the sale?
- The airport projects needed to be prioritized.
- Replacement ferry back on the STIP. Is the cost estimate still good?
- He agreed with Assemblymember Thompson on the South Tongass Water Crossings. Exactly what was the intent?
- The tennis court bubble, canoes and trailer, should be funded out of the one-half percent recreation sales tax.
- He said small projects were $75,000 to $100,000.
- Is the paving included in the EDA application? He said he understood the grant included everything for a turnkey project.
- He noted the two South Tongass fire department projects. He asked about phased development; would it conflict with the North Tongass EDA application. Can the service area afford it? He said the same questions applied to the mini-ranger.
- Two new vehicles for animal control and a cremation unit. What is the breakdown of costs? What was the age, miles, etc., for existing vehicles? Did it increase personnel?

Assemblymember Thompson requested a cost analysis of the cremation unit. Mayor Salazar said the Connell Lake request should remain on the list.

Assemblymember Tipton reiterated the list should be made an agenda item and it should be prioritized. He asked if a special meeting could be scheduled for September 12, following the Board of Equalization meeting, in order to deal with the issue.

Mayor Salazar stated he would like to include in the airport report information about the water taxi such as the number of passengers.

Assemblymember Tipton requested an agenda item be brought forward regarding purchase of bulk tickets for the airport ferry and eliminating the $5 landing fee for small planes.

Assemblymember Thompson asked if the hospital bus stop situation had been resolved. Manager Eckert said staff was working with the contractor to see if some concrete blocks could be moved in order to allow the bus to pass. Assemblymember Thompson asked about dumping sludge at Mountain Point and Manager Eckert said he would check with Director Voetberg. Assemblymember Thompson asked about the AMHS and lay-up facility at Wards Cove. Manager Eckert responded staff was negotiating with AMHS.

Staff Reports [Airport—first meeting of month; Public Works—second meeting of month]

Comments regarding the airport report were made under the Manager's Report.

Mayor's Report

Mayor Salazar said he was glad to see the strong turnout of candidates for elections.

Committee Reports

There were no committee reports given.

**Assemblymembers' Comments**          *9:56:18 PM*

Assemblymember Tipton said he appreciated the passage of the agenda items reimbursing the school district. He said he voted against the budget document because the Borough did not have signed documents for the reimbursement on the generators and he did not believe the Borough should pay cash for the road rather than reduce an existing debt. Assemblymember Tipton said he had e-mail correspondence with Mayor Watson from Craig regarding the land sale and the AMHS lease. He said the item was subsequently dropped from the SEC agenda for the Wrangell meeting. He said he received a packet from an unknown person relating to the Schoenbar project. He said there were e-mails in the packet which contradicted what McGraw's superintendent had told the school board at recent meetings. He expressed frustration with the contractor on the Schoenbar project.

Assemblymember Kiffer said he was pleased to see the number of candidates. He offered best wishes to the Ketchikan residents who were going to the Gulf Coast to assist with cleanup and rescue efforts. He commended the planning staff for their work on the Gravina plan despite reductions in staff the last few years. He wished Assemblymember Shay well. Assemblymember Kiffer commented he would not have been in support of donating to bring "Coco" to the community because there were better ways to spend the money. He said he would miss the meeting of September 19.

*10:01:51 PM* Assemblymember Painter moved to extend the meeting 15 minutes. There was no objection.

Assemblymember Thompson said Schoenbar appeared to be the largest issue facing the Assembly. He said he brought up the AMHS issue because he had talked with Robin Taylor of AMHS and found they were very concerned with the Borough selling the westside of Wards Cove without making provisions for their long-term

plans. He said the operations were good for the community. Assemblymember Thompson expressed his heartfelt concern for the people in Louisiana.

Assemblymember Shay thanked the Clerk for assisting the Assembly. He requested four hands to have the Mayor and/or Manager begin lobbying to name the airport after Congressman Don Young.

AT LEAST FOUR ASSEMBLYMEMBERS AGREED.

Assemblymember Landis expressed his personnel condolences to the victims of Hurricane Katrina and encouraged the citizens of Ketchikan to donate to the assistance efforts. He noted his appreciation for the memorandum from the Clerk. Assemblymember Landis expressed his appreciation for Assemblymember Tipton's efforts in regard to the issue that was going to be brought up by Mayor Watson at Southeast Conference. He noted he also received a packet regarding Schoenbar. He said the Manager's task tracking list would prove useful. Assemblymember Landis said he was part of a group doing an electrical rate study for KPU and had become aware of some information regarding power for street lights outside the city limits. He said there had been requests to the Borough and state to fund the operation of those street lights. He said he had indicated it was the state's responsibility on state highways. Assemblymember Landis thanked staff for its hard and diligent work.

Assemblymember Painter agreed with Assemblymember Landis regarding Hurricane Katrina. He commended the airport manager for the signs being put up at the airport ferry terminal. He said he had sent out an e-mail recently which stated it would be good to review projects every once in a while. He said at the last meeting discussion was held about an extremely high bill for travel for training. Assemblymember Painter said he talked to the airport manager and he was not satisfied with the answer. He noted the airport had one generator, which was not even hooked up, that was the subject of the training. He said the cost also included a laptop and other items. Assemblymember Painter noted he was a dealer for that generator.

**Executive Session**—*Procedure: Motion is made and voted upon. If adopted, executive session is held. If necessary, action is taken in public session following the executive session. If there is more than one executive session topic, each topic will be handled completely separate from the other.*

No executive sessions were scheduled.

**Adjournment**—*The meeting must adjourn by 10:00 p.m. unless that deadline is extended to 10:30 p.m. by a motion approved by a majority of the assembly members present. Any extension beyond 10:30 p.m. requires a unanimous vote of all assembly members present. If the meeting is not adjourned or extended prior to 10:00 p.m., or such extended time as has been set, the meeting shall automatically recess at that time and shall be reconvened at 5:30 p.m. the following day.*

The meeting adjourned at 10:12 p.m.

ATTEST:

*[signature]*
Borough Mayor

*[signature]*
Borough Clerk

**APPROVED: September 6, 2005**