Geoffrey G. Currall, Esquire
Alaska Bar No: 7011053
KEENE & CURRALL, P.C.
540 Water Street, Suite 302
Ketchikan, Alaska 99901
Phone: (907) 225-4131
Fax: (907) 225-0540
E-mail: info@keenecurrall.com

Attorneys for Defendant, Charles Pool

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOERGEN SCHADE and ROBERT MERRELL,<br><br>           Plaintiffs,<br><br>v.<br><br>KETCHIKAN GATEWAY BOROUGH and CHARLES POOL,<br><br>           Defendants. | <br><br><br><br><br><br><br><br><br><br><br>Case No. J05-0017 CV (RRB) |

## AFFIDAVIT OF CHARLES POOL

STATE OF ALASKA    )
                         ) ss:
First Judicial District  )

CHARLES POOL, being first duly sworn upon his oath, states as follows:

1. I am one of the defendants named in the above-entitled matter.

2. I am a resident of Ketchikan, Alaska.

3. I first acquired upland property in the Ward Cove area in 1981.

4. In 2004, I negotiated and purchased approximately 11 acres of property, located in

**AFFIDAVIT OF CHARLES POOL** - Page 1 of 8
*Schade and Merrell v. KGB and Pool* - Case No. J05-0017 CV (RRB)
st/farrel on server/c:Pool, Charles/25.109.D/Affidavit of Charles Pool FINAL 1'06'06

the Ward Cove area on the uphill side of North Tongass Highway next to my existing real property, from the Ketchikan Gateway Borough ("KGB" or "Borough"). In 2001, I negotiated and obtained an Earnest Money Agreement with Gateway Forest Products, Inc. ("Gateway") for this property, but was unable to purchase it before Gateway filed for bankruptcy protection.

5. Because of my ownership of the upland property I was interested in and attended several public meetings and followed public notices of any plans of the Borough to dispose of other property in the Ward Cove area.

6. To the best of my recollection I did not receive any letter, notice or any other written or oral communication, directed to me from the Borough or its employees of its plans to dispose of its Ward Cove property at the August 4, 2005 auction. I learned of the auction from the newspaper and other public and published information disseminated by the Borough and by attending the Borough Assembly, and its committees, meetings. Even though I had expressed serious interest in the property to be sold for many years, I did not suspect that my participation was unwelcome despite the fact that I did not receive a personal invitation to the auction from KGB. To the best of my knowledge, no one received personal invitations to the auction from KGB, whether they were from Ketchikan, Washington State, or anywhere else.

7. When B-17 did not receive any bids meeting the "minimum bid" at the August 4, 2005 auction, the auctioneer announced that they would hear provisional bids which the Borough could accept or reject.

8. I then bid $600,000 on parcel B-17. No one made a higher bid. I then signed a form Agreement for Auction Sale of Real Property. The signed form Agreement is attached as

**AFFIDAVIT OF CHARLES POOL** - Page 2 of 8
*Schade and Merrell v. KGB and Pool* - Case No. J05-0017 CV (RRB)
st/farrel on server/c:Pool, Charles/25.109.D/Affidavit of Charles Pool FINAL 1'06'06

Exhibit A to Pool's Response in Opposition.

9. I learned that the Borough did not accept my bid while attending the August 15, 2005 Borough Assembly meeting. During the meeting, at which I did not speak, the Assembly decided to grant the high bidders on each of the four parcels a First Right of Refusal. There was no discussion as to whether those four bidders were "local" or "non-residents."

10. I had not spoken to the Borough or any of its Assembly Members or employees about a First Right of Refusal prior to that meeting.

11. I received a letter from the Borough Manager dated August 26, 2005 advising me, as the highest bidder at the first auction, of the First Right of Refusal and enclosing a Bidder's Form if I wished to participate. A copy of that letter is attached as Exhibit B to Pool's Response in Opposition.

12. I had that form completed and submitted to the Borough prior to September 20, 2005. A copy of the completed and signed Bidder's Form is attached as Exhibit 12 to KGB's Response in Opposition. After the Second Auction, I exercised the First Right of Refusal, which the Borough had granted to all high bidders at the First Auction.

13. I executed a written contract, dated October 4, 2005, with the Borough to purchase parcel B-17 which is now described as:

> Tract 3017 of the Ward Cove S. E. Replat of portions of U.S. Survey No.'s 1208 and 1508, and a portion Alaska Tidelands Survey No. 1, according to the plat thereof filed August 2, 2005 as Plat No. 2005-30, Ketchikan Recording District, First Judicial District, State of Alaska., hereinafter "Tract 3017".

14. Pursuant to that contract I have tendered to the Escrow Agent and the Borough cashier's checks totaling $815,000.00 and offered to take all steps to close. In light of this Court's

**AFFIDAVIT OF CHARLES POOL** - Page 3 of 8
*Schade and Merrell v. KGB and Pool* - Case No. J05-0017 CV (RRB)
st/farrel on server/c:Pool, Charles/25.109.D/Affidavit of Charles Pool FINAL 1'06'06

December 30, 2005 Minute Order from Chambers, both have declined to close. The Borough has retained $163,000 and returned the $652,000 certified check for the balance of the closing proceeds.

15. If this sale does not close I will be without the property and without my $163,000.00.

16. I am currently losing the use of that money and, at a minimum, the interest that would have accrued on those sums if simply deposited in a bank Certificate of Deposit. In reality I am also incurring loss of opportunity costs resulting from my inability to otherwise use those funds in other investments that might present themselves.

17. Since entering into the written contract with the Borough for the purchase of the property on October 5, 2005 I have been negotiating with various potential lessees of the property but have not yet consummated any transactions.

18. The pendency of this lawsuit is negatively effecting my negotiations with the potential lessees. The issuance of a Temporary Restraining Order or a Preliminary Injunction will essentially terminate my ability to meaningfully consummate those negotiations with a final agreement.

19. In order to consummate the leases on a time table that will fit the lessees' purposes it was necessary to submit applications for Army Corps of Engineers permits for the development of improvements on the property immediately after the scheduled closing of the sale on January 3, 2005. The opportunity will be lost if the sale does not close by the end of January at the latest.

20. I have not identified the potential lessees as I consider their identity proprietary

**AFFIDAVIT OF CHARLES POOL** - Page 4 of 8
*Schade and Merrell v. KGB and Pool* - Case No. J05-0017 CV (RRB)
st/farrel on server/c:Pool, Charles/25.109.D/Affidavit of Charles Pool FINAL 1'06'06

information that must remain confidential.

21. The leading proposal at this point would likely result in a 10-year lease term with an annual gross rent of $120,000 to $180,000.00.

22. That particular, public, proposer is under the pressure of a mandate to leave its current premises and must secure a commitment for a replacement location within the next 4 to 6 weeks.

23. Given these time constraints, any delay in my acquisition of the property from the KGB will most likely result in the loss of that current, public, proposer and my potential for securing the above described long-term lease.

24. Any delay in my acquisition of title to the subject property will result in a delay in the permitting for the construction of improvements needed on the property in order to lease it at its highest and best use to accommodate the public entity.

25. The cost of steel and other construction costs and inflation are escalating and any delay in my acquisition of title to the subject property will increase not only my costs of constructing the necessary improvements but also the commencement of any income from the property to offset my on-going interest costs as well as my acquisition and improvement costs.

26. It is my estimate that if my acquisition of the property is delayed more than four weeks that I will lose the currently best potential, public, tenant at an estimated loss to me, just from the standpoint of lost lease income from that potential tenant, of $1.2 million over the 10-year term.

27. My losses, ranging from the loss of use of the $163,000 and interest thereon, to the

**AFFIDAVIT OF CHARLES POOL** - Page 5 of 8
*Schade and Merrell v. KGB and Pool* - Case No. J05-0017 CV (RRB)
st/farrel on server/c:Pool, Charles/25.109.D/Affidavit of Charles Pool FINAL 1'06'06

loss of four other interested lessees, with potential income of $10,000/month, and the loss due to additional construction costs, and to the time loss of commencement of income from the use of the property, over and above the above stated loss of previously stated rental income, I estimate to be in the area of an additional $1.5 millions over a 10 year period. These losses plus the loss of lease income from the lead tenant is estimated to total $2.7 million dollars over a ten year period.

28. I own 16 acres of Heavy Industrial property on the uplands side of North Tongass Highway, across the road from Tract 3017. As Tract 3017 is uniquely situated across from my existing property, the loss of that property will cause significant, unquantifiable, harm to my business.

29. While Tract 3017 is unique and valuable in its own right, my ownership of it will greatly enhance the usability and value of my upland property and increase the efficiency of my marine oriented construction company, Pool Engineering Inc.

30. If the Borough does not close the sale of this transaction to me I have requested that my attorneys file a complaint against the Borough for breach of contract and specific performance.

Dated this 6th day of January 2006.

_____
Charles Pool

**AFFIDAVIT OF CHARLES POOL** - Page 6 of 8
*Schade and Merrell v. KGB and Pool* - Case No. J05-0017 CV (RRB)
st/farrel on server/c:Pool, Charles/25.109.D/Affidavit of Charles Pool FINAL 1'06'06

|   |   |
|---|---|
| STATE OF ALASKA | ) |
|  | ) ss: |
| FIRST JUDICIAL DISTRICT | ) |

THIS IS TO CERTIFY that on this 6TH day of January 2006, before me, the undersigned, a Notary Public in and for the State of Alaska, duly commissioned and sworn, personally appeared **Charles Pool**, to me known to be the person described in and who executed the above and foregoing instrument; and who acknowledged to me that he executed the same freely and voluntarily for the uses and purposes therein mentioned.

WITNESS my hand and official seal the day and year in this certificate first above written.



Official Seal
Sharon E. Thompson
Notary Public-State Of Alaska
My Comm. Expires
August 8, 2009

Notary Public for Alaska
Commission expires: 8-8-09

**AFFIDAVIT OF CHARLES POOL** - Page 7 of 8
*Schade and Merrell v. KGB and Pool* - Case No. J05-0017 CV (RRB)
st/farrel on server/c:Pool, Charles/25.109.D/Affidavit of Charles Pool FINAL 1'06'06

KEENE & CURRALL
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW
540 WATER STREET, SUITE 302
KETCHIKAN, ALASKA 99901
TELEPHONE (907) 225-4131

### Certificate of Service

This certifies that I am an authorized agent of Keene & Currall, for service of papers pursuant to Civil Rule 5, and that on the 6TH day of **January 2006**, I caused a true and correct copy of the foregoing to be:

- ■ **Faxed**
- ☐ Hand Delivered
- ■ **Mailed**
- ☐ Delivered via court receptacle

to the following:

**Fax No. (907) 789-1913**
Richard L. Nelson
Baxter Bruce & Sullivan, P.C.
Post Office Box 32819
Juneau, Alaska 99803

**Fax No. (907) 225-5513**
Mitchell A. Seaver
Acting Borough Attorney
307 Bawden Street
Ketchikan, Alaska 99901

**Fax No. (907) 228-6683**
Scott A. Brandt-Erichsen
Borough Attorney
Ketchikan Gateway Borough
344 Front Street
Ketchikan, Alaska 99901

By _____/s/ Aaron E. Thompson_____
   Keene & Currall

**AFFIDAVIT OF CHARLES POOL** - Page 8 of 8
*Schade and Merrell v. KGB and Pool* - Case No. J05-0017 CV (RRB)
st/farrel on server/c:Pool, Charles/25.109.D/Affidavit of Charles Pool FINAL 1'06'06