IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOERGEN SCHADE and ROBERT MERRELL,<br><br>　　　　　Plaintiffs,<br><br>vs.<br><br>KETCHIKAN GATEWAY BOROUGH and CHARLES POOL,<br><br>　　　　　Defendants. | Case No. 1:05-cv-0017 RRB<br><br>**ORDER DENYING TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION AND GRANTING MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT** |

I.    INTRODUCTION

        Before the Court are Plaintiffs Joergen Schade ("Schade")

and  Robert  Merrell  ("Merrell")  with  a  Motion  for  Temporary

Restraining Order and Preliminary Injunction against Defendants to

prevent the transfer of land between Defendants "from taking place

until an evidentiary hearing can be held and preliminary injunctive

relief can be considered pending trial on the merits."[1]  Defendant

Ketchikan  Gateway  Borough  ("Borough")  opposes  and  argues  that

_____

        [1] Clerk's Docket No. 2

ORDER DENYING INJUNCTION AND GRANTING DISMISSAL - 1
1:05-CV-0017 RRB

Plaintiffs have not met their burden.[2]  The Borough also moves to

dismiss Plaintiffs' Complaint.[3]  Defendant Charles Pool ("Pool")

opposes Plaintiffs' motion and supports the Borough's Motion to

Dismiss.

## II. FACTS

This is an action brought by Plaintiffs seeking to

prevent the transfer of property from the Borough to Pool.[4]

In March of 2005, the Borough Assembly adopted Resolution

No. 1881 to sell certain properties owned by the Borough, including

parcel B-17, at a public outcry auction.[5]  The minimum bids for the

parcels were set at the Borough's tax assessed value.[6]  Notice of

the auction was published on the internet and in publications in

multiple cities, including cities in the State of Washington.[7]

On August 4, 2005, the Borough held the auction.[8]  Schade

attended this auction, but Merrell did not.[9]  The minimum bid for

---

[2] Clerk's Docket No. 25 at 26.

[3] Id.

[4] Complaint at ¶ 8.

[5] Clerk's Docket No. 25 at Ex. 1.

[6] Id.

[7] Id. at Ex. 4.

[8] Complaint at ¶ 9.

[9] Id. at ¶ 11.

ORDER DENYING INJUNCTION AND GRANTING DISMISSAL - 2
1:05-CV-0017 RRB

parcel B-17 and three other parcels was not met.[10]  The Borough officials in charge of the auction then decided and announced that the auctioneer would solicit bids on each of the remaining parcels, the highest of which would be presented to the Borough Assembly as an offer to purchase that parcel.[11]  For parcel B-17, Pool made a high bid of $600,000.[12]  Neither Schade nor Merrell bid on this parcel.

On August 10, 2005, Merrell submitted an unsolicited offer of $934, 830 for parcel B-17 along with a deposit check of $50,000.

On August 15, 2005, the Borough Assembly met and considered the parcels of property that did not sell at the auction.  The Borough Assembly decided to offer the unsold parcels for sale by open bid for a period of 30 days.[13]  The minimum bid for each parcel was set at the amount of the high offer for that parcel made at the auction.[14]  Further, the persons who made the high offers at the auction were given a right of first refusal to

---

[10] Id. at ¶ 12.

[11] Id.

[12] Id. at ¶ 13.

[13] Clerk's Docket No. 25 at Ex. 7 at 40-42.

[14] Id.

purchase the property.[15]   This plan was adopted by the Borough Assembly in Resolution 1906 on September 6, 2005.[16]

The Borough Assembly accepted bids on these parcels until September 20, 2005.  Merrell submitted a bid of $810,000 for parcel B-17, effectively withdrawing his earlier offer of $934,830.[17] Schade submitted a bid of $815,000 for parcel B-17.[18]   Pool submitted a bid of $600,000.[19]  Pool later exercised his right of first refusal and agreed to match the high offer submitted by Schade.[20]   The Borough agreed to sell the property to Pool.[21]

Schade and Merrell now bring suit, alleging (1) that the Borough abused its discretion by acting in an arbitrary and capricious manner with respect to the sale; (2) that the Borough should be estopped from proceeding with the sale to Pool; and (3) that Schade and Merrell were denied equal protection because the

---

[15] Id.

[16] Id. at Ex. 8.

[17] Clerk's Docket No. 2 at Ex. D.

[18] Clerk's Docket No. 19 at ¶ 16.

[19] Clerk's Docket No. 25 at Ex. 12.

[20] Clerk's Docket No. 25 at Ex. 13.

[21] Id.

second bidding period distinguished between local and out-of-state bidders.[22]

## III. DISCUSSION

The burden is on the moving party to demonstrate that they are entitled to a temporary restraining order.[23]  Such an order is appropriate if "the plaintiff demonstrates *either* a combination of probable success on the merits and the possibility of injury *or* that serious questions are raised and the balance of hardships tips sharply in his favor."[24]  These tests are points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases.[25]

---

[22] Complaint.

[23] Mattel, Inc. v. Greiner and Hausser GMBH, 354 F.3d 857, 869 (9th Cir. 2003).

[24] Earth Island Inst. v. United States Forest Service, 351 F.3d 1291, 1298 (9th Cir. 2003)(citation and internal quotations omitted).  This phrasing of the test is the "alternative test." Under the "traditional criteria," "a plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases)."  *Id.* at 1298. (citation and internal quotations omitted).

[25] Id. at 1300.

ORDER DENYING INJUNCTION AND GRANTING DISMISSAL - 5
1:05-CV-0017 RRB

## A.    Abuse of Discretion Claim

In Alaska, the Borough's power to manage and dispose of borough land is to be liberally construed.[26]  There is a presumption "that proceedings of the governing body of a municipality have been conducted in accordance with the law."[27]  Plaintiffs cannot overcome this presumption merely by pointing out anomalies in the actions by the Borough.[28]

Here, a Borough ordinance provides that the Borough may sell real property "when and upon such terms and conditions as the assembly, in its sole discretion, determines by resolution to be in the best interest of the borough."[29]  The Plaintiffs argue that this language does not shield the Borough when it makes arbitrary and capricious decisions and that the Borough made no best interest determination.[30]  The alleged arbitrary and capricious decisions appear to be (1) receiving bids at the auction below the set minimum; (2) adopting these bids as the minimum bids for the second

---

[26] Cabana v. Kenai Peninsula Borough, 50, P.3d 798, 803 (Alaska 2002)(citing AS 29.35.400).

[27] Id.

[28] Id.

[29] Section 40.18.010(a).

[30] Clerk's Docket No. 22 at 4.

ORDER DENYING INJUNCTION AND GRANTING DISMISSAL - 6
1:05-CV-0017 RRB

round of bidding; and (3) granting the high bidder at the first auction the right of first refusal in the second round of bidding.[31]

After the first auction, the Borough made findings that reopening the bidding for those parcels that did not sell in the initial auction was in the Borough's best interests.[32] While debating Resolution 1906, there was discussion that using the high bid from the first auction as the new minimum bid was necessary so as "to never take points off the scoreboard."[33] In addition, the Borough Assembly discussed providing the original high bidders with a right of first refusal since they had made the high bids originally.[34] There was little discussion of why a right of first refusal was given, except that it had been in a previous auction involving "Alaska Housing."[35] Nevertheless, it was clearly the Borough's intent to proceed in this fashion.

While Plaintiffs may argue that there were other options available to the Assembly, including Merrell's bid submitted after the auction, that does not make the Borough's decision concerning how to conduct the second round of bidding arbitrary and

---

[31] Complaint at ¶¶ 32-34.

[32] Clerk's Docket No. 25 at Ex. 8.

[33] Id. at Ex. 7 at 28.

[34] Id. at 29-31.

[35] Id. at 29.

ORDER DENYING INJUNCTION AND GRANTING DISMISSAL - 7
1:05-CV-0017 RRB

capricious.  It is not for the courts to determine whether a decision is a wise one.  Moreover, the Court does not have to agree with the decision made by the Borough.  And, there is no requirement that the Borough conduct the second round of bidding in the same manner as it had conducted the first auction.  The only requirement is that the manner of sale be in the Borough's best interest, <u>as determined by the Borough</u>.[36]  Here there is no indication that the Borough's decision regarding how to proceed with the sale was adverse to the Borough's interest at the time the decision was made.

Plaintiffs also argue that while the change during the auction to accept bids lower than the assessed value was announced, no notice was provided to those people who did not attend the auction.[37]  However, the Bid Packet stated that, "It is further understood that any announcements made the day of the sale supersede any and all advertising or printed material previously distributed."[38]  There is no evidence that the Borough could not alter the way in which the auction was conducted.  However, Plaintiffs argue that § 40.18.010(a) requires that all Borough actions be done by resolution.  While the ordinance could be read

_____

[36] <u>Norene v. Municipality of Anchorage</u>, 704 P.2d 199, 202 (Alaska 1985).

[37] Clerk's Docket No. 25 at Ex. 7 at 19-20.

[38] Clerk's Docket No. 27 at Ex. C. at 2

ORDER DENYING INJUNCTION AND GRANTING DISMISSAL - 8
1:05-CV-0017 RRB

that way, it also could mean that the decision to act must be by resolution, but not the actual process of selling the land. Regardless, it was Merrell's choice not to attend the auction and Schade's choice not to submit a bid after the auction rules were changed. Their failed gamble to acquire the property outside of the auction process does not invalidate the Borough's actions.

Plaintiffs make much of the fact that there is no evidence that the Borough Assembly considered the offer made by Merrell outside of either official bidding process. However, there is no requirement that the Borough Assembly consider an offer submitted outside of the formal processes. While this may have been the highest bid, Merrell himself never matched it during either official bidding process. Given Merrell's lack of participation in the first auction, and the fact that Schade out-bid him in the second bidding process, he also appears to lack standing to complain about the award to Pool, for Merrell has no legitimate claim to the property.

Second, the Court considers the probability of harm to both parties. Plaintiffs argue that they will suffer irreparable harm without the injunction because of the unique nature of real estate.[39] However, Plaintiffs do not actually have property rights to parcel B-17. Should the sale to Pool be invalidated, Plaintiffs

_____

[39] Clerk's Docket No. 22 at 3.

ORDER DENYING INJUNCTION AND GRANTING DISMISSAL - 9
1:05-CV-0017 RRB

have no more rights to that land than any other citizen.  If the sale process in Resolution 1906 is found invalid, discretion remains with the Borough to determine whether or not to offer the property for sale again and to determine the procedure for that sale.

In their reply brief, Plaintiffs also argue that the denial of their right to participate in a fair bidding process establishes irreparable harm.[40]  This is a right that has been recognized in some out-of-circuit district courts, but Plaintiffs do not cite to any Ninth Circuit opinion recognizing such a right. In fact, the Ninth Circuit refused to consider such an argument because it was raised for the first time in a reply brief.[41]  Here, Plaintiffs initial motion asserted that Plaintiffs would suffer irreparable harm because of the unique nature of real estate.[42] Plaintiffs also alleged that the public would benefit from a free and fair competitive bidding process, but Plaintiffs did not allege that they personally would be irreparably harmed without such a process.[43]  This argument should be given little weight because it was raised initially in the reply brief.  Nevertheless, the facts

---

[40] Clerk's Docket No. 28 at 11.

[41] Big Country Foods, Inc. v. Board of Educ. of the Anchorage School Dist., 868 F.2d 1085, 1088 (9th Cir. 1989).

[42] Clerk's Docket No. 22 at 3.

[43] Id.

do not support Plaintiff's argument that the bidding process was unfair or non-competitive or otherwise legally flawed. Therefore, Plaintiff's allegation of irreparable harm on this theory is weak.

In contrast, there are specific harms facing the Defendants should the injunction be granted. First, the Borough would lose Pool's purchase price, lose revenue it could have earned on those funds, and is faced with the costs of maintaining the property.[44] There are other intangible harms caused by the cloud on the transaction, including problems with obtaining title insurance.[45] Second, Pool's negotiations with potential lessees is impeded, an impediment that will only increase if the sale does not close within the near future because of necessary applications to the Army Corps of Engineers to improve the property.[46]

Thus, as to the first cause of action, the balance of hardships tips sharply in favor of the Defendants. Furthermore, given the above, the likelihood of Plaintiffs succeeding on the merits is not high.

B.   Estoppel Claim

In Alaska, the requirements for estoppel against a municipality are: (1) assertion of a position by conduct or word;

---

[44] Clerk's Docket No. 25 at 10-11.

[45] Id. at 11-12.

[46] Clerk's Docket No. 26 at ¶¶ 17-19.

ORDER DENYING INJUNCTION AND GRANTING DISMISSAL - 11
1:05-CV-0017 RRB

(2) reasonable reliance thereon; (3) resulting prejudice; and (4) that such estoppel will be enforced only to the extent that justice so requires.[47]   Ordinarily, estoppel is a defense that "applies where a property owner receives a permit that was beyond the power of an administrative officer to grant, the owner detrimentally relies on the validity of the permit, and the local government attempts to revoke the permit and then enforce the ordinance."[48] Plaintiffs do not provide any support for using it as an offensive weapon.

Even if allowed, it is not clear whether Plaintiffs actually were prejudiced by the use of the high bids in the first auction as minimum bids with rights of first refusal in the second bidding round.  At the first auction, it was not only Plaintiffs who did not know of this plan, Pool also was unaware.  There was no notice at the first auction concerning the second bidding process because that process was not determined until after the close of the first auction.  It was Plaintiffs' decision not to bid higher than Pool at this initial auction.  As low bidders, they subsequently lost the right of first refusal, which the Borough

---

[47] Municipality of Anchorage v. Schneider, 685 P.2d 94, 97 (Alaska 1994).

[48] Id. (quoting Fields v. Kodiak City Council, 628 P.2d 927, 931 (Alaska 1981)).

ORDER DENYING INJUNCTION AND GRANTING DISMISSAL - 12
1:05-CV-0017 RRB

determined should go to the high bidder.  While this development
was unforseen, it cannot be categorically considered to be unfair.

Therefore, the claim of estoppel has an even lower chance
of success than the first claim.  Given that the balance of
hardships remains the same, Plaintiffs have not met their burden
for a temporary injunction on this claim either.

### C.    Equal Protection Claim

Plaintiffs argue that Resolution 1906 "denied Schade and
Merrell, as out-of-state bidders, equal protection of the law in
comparison with local bidders, like Pool, who had submitted the
high, yet below minimum, bids in an earlier auction."[49]  Because no
suspect class is involved, the rational basis test applies.  Under
this test, the question is whether the classification is rationally
related to a legitimate government purpose.[50]  Further, "State
legislators are presumed to have acted within their constitutional
power despite the fact that, in practice, their laws result in some
inequality."[51]

Here, Plaintiffs cannot overcome their burden.  While it
appears that only a local resident had the right of first refusal
in the second bidding period, this was due to his status as high

---

[49] Clerk's Docket No. 22 at 12.

[50] City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976).

[51] McGowan v. Maryland, 366 U.S. 420, 425-26 (1961).

bidder in the first auction, not to his place of residence. Further, the attendance at the first auction was not limited to local residents only, as evidenced by Schade's attendance and the Borough's advertisements of the auction in publications outside Alaska. In passing Resolution 1906, there was no mention made of the residency of any of the bidders.

The Borough had a rational basis for treating the high bid at the first auction as the minimum bid in the second round and allowing those bidders the right of first refusal - it guaranteed the Borough a minimum sale while at the same time working to increase their profits.

## IV. CONCLUSION

Considering all the factors set forth above, the Court concludes that Plaintiffs have failed to meet their burden or establish facts that would justify a temporary injunction in this matter. The Motion for a Temporary Restraining and Preliminary Injunction at Docket 2 is therefore **DENIED**.

Moreover, a thorough review of the documents filed herein, including the various attachments, and viewing the facts in a light most favorable to Plaintiffs, leads the Court to conclude that Plaintiffs have failed to state a claim upon which relief can be granted. Therefore, the Motion to Dismiss or, in the Alternative, for Summary Judgment must be granted as a matter of

law.  The result would be the same whether treated as a Motion to Dismiss or a Motion for Summary Judgment.  Defendant is entitled to utilize any legal method it desires to sell its property.  In the present case, although, in hindsight,  the path followed from the initial decision to sell the property to the ultimate sale was not a smooth one, and may have even been clumsy, the Court concludes, for the reasons stated above, that it did not involve arbitrary or capricious conduct and did not violate the equal protection clause of  the  Constitution.    The  sale  must  therefore  be  upheld. Defendants' Motion to Dismiss is therefore **GRANTED**.

ENTERED this 13th day of February, 2006.


//s//
_____
RALPH R. BEISTLINE
UNITED STATES DISTRICT JUDGE

ORDER DENYING INJUNCTION AND GRANTING DISMISSAL - 15
1:05-CV-0017 RRB